WHEDBEE *et al. v.* GODSEY *et al.*

(*Knoxville,* September Term, 1949.)

Opinion filed February 10, 1950.

S. E. HODGES, ACUFF & ACUFF, KENNETH GRESHAM, JAMES E. O'CONNER and Ross WILLIAMS, all of Knoxville, for complainant (appellants).

HARLEY FOWLER, S. F. FOWLER and J. A. ROWNTREE, all of Knoxville, for defendant (appellees).

MR. JUSTICE PREWITT delivered the opinion of the Court.

The Chancellor sustained a demurrer to the original bill, as amended, and held valid Chapter 176, Private Acts of 1945, creating a Sanitary District of Fountain City in Knox County.

The bill assails the constitutionality of Chapter 176, Private Acts of 1945, as amended by Chapter 143, Private Acts of 1947, and by Chapter 831, Private Acts of 1949.

By amendment, the bill also challenges the validity of Chapter 126, Public Acts of 1943, because complainants claim that the first three Acts are in violation of Article 2, Section 17, of the Constitution, as said original Act, as amended, embraces more than one subject.

Complainants contend that the above-mentioned Acts run contrary to the terms of Chapter 248, Public Acts of 1937, known as "The Utility District Act of 1937," which is a general Act applicable to any portion of any county in the State seeking to create a sewer and water system.

As to the constitutionality of Chapter 176, Private Acts of 1945, and the amendments thereto (which amendments carry the exact wording of the original Act), the caption is as follows: "An Act to incorporate the Sanitary District of Fountain City in the County of Knox, and to prescribe its duties and powers, and provide for the election of officers and prescribe their duties."

The first portion of the caption of Chapter 176, Private Acts of 1945, above quoted, provides for a plan of incorporation of the Fountain City area to create a sanitary district. The caption has but one purpose, and that is, sanitation, which includes waterworks, water supplies, distribution, sewerage, and other utilities that are necessary to reach the object intended by the Act. The body of the Act is within the caption and the title gives sufficient notice of the contents of the Act. This being true, these Acts do not, therefore, run counter to Article 2, Section 17, of the Constitution.

It is insisted by complainants that the amendments to Chapter 176, Private Acts of 1945, violate the requirements of that portion of Article 2, Section 17, of the Constitution as to the title or substance of the Act amended.

Where the title of the original Act and the title of the amending Act or Acts are the same, and the subject matter of the amending Act or Acts is embraced in the title of the original Act, there is no conflict with Article 2, Section 17, of the Constitution.

■ It is further insisted by complainants that Chapter 126, Public Acts of 1943, as well as Chapter 176, Private Acts of 1945, and the amendatory Acts thereto, Chapter 143, Private Acts of 1947, and Chapter 831, Private Acts of 1949, suspends a general law, Chapter 248, Public Acts of 1937 to the benefit or detriment of the inhabitants of those who live within the Fountain City Sanitary District, thus violating Article 11, Section 8, of the Constitution. Chapter 126, Public Acts of 1943, suspends the general Act by population classification, making said Act inapplicable to Knox County. It, therefore, has no bearing on the question of whether Chapter 176, Private Acts of 1945, and the amendments thereto, violate Article 11, Section 8, of the Constitution.

■ As to the point made that Chapter 176, Private Acts of 1945, suspends a general law, it is to be observed that said Private Act, as amended, creates a public corporation, with governmental powers, and has nearly all the earmarks of a municipality. This being true, the Legislature has absolute control over such public corporations.

With respects to ambiguities and uncertainties as to who are qualified voters in elections to authorize the issuance of bonds, it will be observed that Section 9 of Chapter 176, Private Acts of 1945, as amended by Section 6, Chapter 831, Private Acts of 1949, provides, in part, as follows: "That said district, when authorized by a majority vote of the owners of real property lo-

cated in said district as herein provided, shall have the power and is hereby authorized to issue its negotiable bonds from time to time for the purpose of acquiring, . . ."

Section 13 of the above amended Act provides, in part, as follows: "That at such time as it is necessary to hold an election on the proposition to issue bonds, the Board of Commissioners of said District shall adopt a resolution requesting the Election Commissioners of Knox County to call and hold such election within said District so that all qualified voters residing within the boundaries of said District may vote on the question. . . . Any resident citizen of the District who is an owner of real property located in said District and who was qualified to vote at the general election next preceding the date of the holding of such bond election, or who is, on the date of the holding of such bond election, then qualified to vote at a general election, shall be entitled to vote at such bond election."

We are of opinion that the last sentence above quoted must prevail. Any resident citizen who owns real property located in said District and who was qualified to vote at the general election next preceding the date of the holding of such bond election, or who was at that time qualified to vote at a general election, shall be entitled to vote at such bond election.

It is charged that some complainants are both residents and property owners of said District, while others are non residents of the District but own property within the District. The question is: How will the nonresidents of the District who own property within the District, know whether or not they are entitled to vote in the election of the Commissioners? We think this question is

determined by Section 4, Chapter 176, Private Acts of 1945, which provides that three Commissioners "shall be elected by the owners of real property located in said district," while Section 10, Chapter 831, Private Acts of 1949, provides that the term of the Commissioner elected for the first two years and expiring July 1, 1949, shall be extended to the next regular election in Knox County in 1950, at which general election his successor shall be elected "by a majority of the bona fide users of the services provided by the said district". The Commissioners whose election is here referred to, are those who acted upon the organization of the Sanitary District.

Section 4, Chapter 176, Private Acts of 1945, provides, in part, as follows: "That said Sanitary District shall be governed and operated by a board of three commissioners, who are residents and owners of real estate in said district, who shall be elected by the owners of real property located in said district, . . ."

After the first election, Section 4 of the Act provides that the Commissioners shall be elected at two-year intervals, and that said Commissioners shall be elected for terms of two, four and six years respectively. The same section then provides: "Except as otherwise provided in this Act, such elections shall be conducted by the election authorities prescribed by the general law of the State of Tennessee and according to the provisions of the general election laws of the State of Tennessee. Notice of said election shall be published at least once not more than forty-five or less than twenty-one days prior to the date on which said election is to be held. Only qualified voters residing within the boundaries of the district who are bona fide users of the services furnished by the district according to the records of the dis-

trict shall be entitled to vote at any election held after the installation and commencement of operations of such system.''

█ It seems clear that the first portion of Section 4, above quoted, was inserted for the purpose of putting in motion the organization of the Act and electing its governing body, but that thereafter when the Commissioners were to be replaced, in the event of a vacancy, then the first statute was inapplicable and the second becomes operative, and they are to be elected ''by a majority of the bona fide users of the services provided by said District.''

It is also insisted by complainants that the 1949 Act requires people not within the boundaries of the Sanitary District be compelled to connect with the sewer system. Section 9 of said Act provides, in part, as follows: ''. . . for the purpose of acquiring, constructing, extending, or improving such system or systems, the owner, tenant or occupant of each lot or parcel of land which abuts upon a street, alley, or other public way containing a sanitary sewer ready for service and upon which lot or parcel a building exists for residential, commercial or industrial use, shall immediately connect such building with such sanitary sewer and shall cease to use any other means for the disposal of sewage, . . .''

█ The Legislature intended the first portion of this Act (1) to protect the public health of persons residing within the Sanitary District, (2) to assure the payment of any bonded indebtedness within said District, and (3) to require the owners, tenants or occupants residing within said District, to connect such buildings with the sanitary sewer. This intention of the Legislature is shown by the further provision of this Act authorizing

the governing authorities to enter into contracts with those who live outside the District's boundaries.

Complainants' insistence that the Private Act of 1945 suspends a general law, and the holding of the Chancellor is not in keeping with the case of *Gilliam* v. *Adams et al.*, 180 Tenn. 74, 171 S. W. 2d 813, is not in point. In that case it was held that Chapter 451, Private Acts of 1939, by population classification, applicable to Henderson County alone, was void, and the provisions of that Act violated the General Education Act, which provides an educational system for the whole State.

■ We hold that Chapter 248, Public Acts of 1937, which might apply to all sections of the State, is not exclusive, as sanitary conditions may vary in different sections of the State.

We have considered all assignments of error and find them without merit. The decree of the Chancellor is, therefore, affirmed.

All concur.