Porter B. RECTOR, Appellant-Plaintiff,

v.

James GRIFFITH et al.,
Appellees-Defendants.

Supreme Court of Tennessee.

April 3, 1978.

Cecil D. Branstetter, Nashville, for appellant-plaintiff; Robert T. Beaty, Oneida, of counsel.

Jim G. Creecy, Asst. Atty. Gen., for appellees-defendants; Brooks McLemore, Jr., Atty. Gen., Nashville, Ted Q. Wilson, Oneida, of counsel.

## OPINION

HARBISON, Justice.

This action was instituted by the incumbent Commissioners of Citizens Gas Utility District of Scott and Morgan Counties, challenging the constitutionality of Chapter 237 of the Public Acts of 1977. The Chancellor upheld the statute, and we affirm his decision.

The only constitutional infirmity asserted on appeal is an alleged violation of Article XI, § 8 of the Tennessee Constitution, requiring the enactment of general laws and forbidding invidious or discriminatory class legislation.

The 1977 statute which is challenged altered the number and the method of selection of the Board of Commissioners of the utility district. It named six individuals to serve as commissioners, in addition to three persons who were then incumbent, and provided that all nine persons should serve until the August 1978 general election. After that date, five persons are to serve as a Board of Trustees for specified staggered terms, the trustees to be elected by the subscribers of the district. The statute provides for annual elections to be held among all the membership "in the same way and manner as electric cooperatives." It also requires the Board of Trustees to promulgate by-laws similar to those provided for electric cooperatives. The challenged statute also increases the attendance fee for members of the Board of Trustees.

The only evidence introduced upon the trial of the case was a brief stipulation. This stated that the utility district was properly organized under the provisions of the Utility District Law of 1937, as amended, T.C.A. §§ 6–2601 et seq. The district came into existence on March 15, 1958, and a copy of the decree by which it was incorporated was stipulated. It was also agreed that the original plaintiffs were the incumbent commissioners prior to the enactment of the statute in question, and that the six persons named as additional commissioners in the 1977 statute were joined as defendants (together with the Attorney General of the state).

A copy of the statute in question was stipulated, together with a copy of Chapter 225 of the Public Acts of 1959. The latter had expressly validated the organizational

and subsequent proceedings with respect to the utility district, including certain bonds which it had issued. That statute also provided for an attendance fee to members of the Board of Commissioners.

By stipulation there was also filed a transcript of legislative proceedings incident to the adoption of the 1977 statute, including the remarks of a state senator as to the reasons for its passage.

No other evidence was submitted to the. Chancellor prior to his decision of the case. Subsequent thereto an affidavit was filed by one of the commissioners, in support of an application to continue in force a temporary injunction, pending appeal. The contents of this affidavit were not admitted or received into evidence upon the merits of the controversy.

■ We make this observation, because counsel for both parties, in their briefs, make factual assertions which were not covered by the stipulation and are not matters of which the Court may take judicial notice. For example, counsel for appellees make reference to increased production of natural gas in the area served by the utility district, while counsel for appellant refers to the financial condition and the administrative costs of the utility district. We have confined our consideration to those matters which were contained in the stipulation submitted to the Chancellor for purposes of trial.

■ There can be no question that a utility district such as that involved here is a public, municipal corporation. The authorizing statutes expressly so provide, T.C.A. § 6–2607, although they withhold any power of taxation from the district. It is given, however, numerous specific corporate powers, together with the right of eminent domain and general incidental powers necessary for the implementation of its purposes. T.C.A. §§ 6–2610 et seq.[1]

---

1. Such districts are not "municipalities" within the home rule provisions of the state constitution. *Fountain City Sanitary District v. Knox*

*County Election Comm'n,* 203 Tenn. 26, 308 S.W.2d 482 (1957).

■ Appellant concedes that the General Assembly has broad power to enact private or special legislation with respect to the corporate structure and functions of public corporations, but his primary insistence is that it may not adopt such special legislation in contravention of the general law or in such a manner as to confer discriminatory benefits and privileges upon certain individuals or groups of citizens.

Appellant insists that the Legislature has provided by general law for the method of selection of commissioners of utility districts, and that the 1977 statute under consideration attempts without a rational basis to provide a wholly different method, in contravention of the general statutes.

An examination of the Utility District Law of 1937, as amended, however, reveals that it authorizes many different and varied methods of selection of district commissioners. Prior to 1973, T.C.A. § 6–2614 contained a fairly general method, consisting of the filling of vacancies by the remaining incumbents. In the event of their inability to agree, provisions were made for the county judge to fill a vacancy. Subsequent amendments to that statute, however, provided for popular election of commissioners in certain of the larger counties of the state. The terms of office of the latter were entirely different from the terms provided under the prior general law.

This general system was modified substantially by the enactment of Chapter 249 of the Public Acts of 1973. Under that act, covering most types of districts, vacancies are to be filled by the county judge from a list of nominees submitted by the incumbent commissioners, with special provisions in the event of his failure to exercise the appointive power. Additional provisions are made for multi-county districts.[2]

Expressly excepted from the 1973 legislation, however, were all natural gas utility districts operating in the state, where the older methods of filling vacancies by the remaining incumbents or by election were retained. There were additional exceptions contained in the 1973 act as to particular counties, and these, together with later amendments, now exempt counties in ten population brackets from the "general" method of selection provided by the 1973 act. See T.C.A. § 6–2638(a). Small water utility districts are also excepted. T.C.A. § 6–2638(d).

It is apparent that almost every conceivable method of selection of boards of commissioners of utility districts is authorized in one way or another, and to varying degrees, by the "general" statutes on the subject.[3] Natural gas utility district boards generally remain under the pre-1973 statutory provisions,[4] but the General Assembly has clearly authorized numerous methods of selection of similar officials in different parts of the state, apparently in response to local needs or demands. Uniformity in selection and tenure are not demonstrated statewide policies under the general statutes.

The 1977 statute at issue here makes reference to the Electric Cooperative Law, T.C.A. §§ 65–2501 et seq. The provisions of that act authorize five-member boards of

---

**2.** The 1973 legislation made many other important changes in the utility district laws, including rules and regulations regarding complaints and limited review of rates and services by the Public Service Commission.

**3.** Appointment by the Quarterly County Court was authorized in certain larger counties by Tenn.Pub.Acts 1977, c. 261, T.C.A. § 6–2614(c).

**4.** The General Assembly has stated its reasons for exempting gas utility districts from a number of general statutes applying to other types of districts. T.C.A. § 6–2638(c). These are that such districts purchase their requirements from interstate natural gas pipelines. The rates, services and supplies of the latter are federally regulated, as are all safety standards applicable to the transmission and distribution facilities of natural gas districts. Likewise, bonds issued for the construction or replacement of such facilities can only be issued after approval by federal regulatory agencies.

trustees of electric cooperatives, who are popularly elected by their members. The duties and responsibilities of such trustees, including fiscal affairs and bonded indebtedness of the cooperatives, are prescribed by statute, T.C.A. §§ 65–2508, 2510. These do not differ so greatly from the duties and responsibilities of commissioners of utility districts as to indicate that popular election of the latter commissioners would be contrary to public policy or wholly inimical to the discharge of the duties of their offices. Appellant suggests, in his brief, that appointment by the incumbents is a method of filling vacancies superior to popular election. In the absence of testimony on the point, however, we are unable to conclude as a matter of law that the method chosen by the General Assembly for electric cooperatives is inherently unsuitable for utility district commissioners.

Relied upon by the Chancellor and by appellees is the case of *Whedbee v. Godsey*, 190 Tenn. 140, 228 S.W.2d 91 (1950), in which this Court upheld a private act providing for the creation of a sanitary utility district in Knox County, with different provisions from those contained in the general utility district law of 1937, including the popular election of its board of commissioners. In response to a contention similar to that advanced by appellants here, the Court said:

"As to the point made that Chapter 176, Private Acts of 1945, suspends a general law, it is to be observed that said Private Act, as amended, creates a public corporation, with governmental powers, and has nearly all the earmarks of a municipality. This being true, the Legislature has absolute control over such public corporations." 190 Tenn. at 144, 228 S.W.2d at 93.

Further, the Court noted that the Utility District Law of 1937, which might apply to all parts of the state,

". . . *is not exclusive*, as sanitary conditions may vary in different sections of the State." 190 Tenn. at 148, 228 S.W.2d at 94 (emphasis added).

Also, in the case of *Johnson City v. Allison*, 50 Tenn.App. 532, 362 S.W.2d 813 (1962), there was upheld a private act authorizing selection of members of an electric power board in a manner different from that provided by the general state law governing such utilities, T.C.A. §§ 6–1501 et seq. Although a reasonable factual basis for the special provisions contained in that private act was shown in the record, the Court stressed the public and governmental nature of the utility and the almost plenary power of the general assembly with regard to such entities. It said:

"Complainant, by organizing its power board under the general act of 1935, did not acquire constitutional immunity from the future exercise by the Legislature of its power to change the composition of the Board whenever warranted by a change of conditions deemed to involve the health and economic wellbeing of the territory it serves." 50 Tenn.App. at 538, 362 S.W.2d at 815.

The provisions of Article XI, § 8 of the Tennessee Constitution have been the subject of almost innumerable cases in this state, and we readily concede that it is difficult to reconcile all of the decisions on the many issues which have been the subject of litigation thereunder. Throughout the history of the state, the General Assembly has enacted thousands of private acts dealing with various aspects of local government, and the constitutional language has been discussed and construed at length in literally hundreds of cases arising under such local legislation.

In the recent case of *Brentwood Liquors Corp. of Williamson County v. Fox*, 496 S.W.2d 454 (Tenn.1973) (involving special local taxation), the Court discussed seemingly conflicting lines of previous cases. One of these was to the effect that the General Assembly has unlimited authority to enact private legislation affecting local units of government in their political or governmental capacities without violating Article XI, § 8. In other cases, however, it

has been held that such authority of the Legislature may not be exercised so as to suspend a general law, mandatorily applicable statewide, unless there is some reasonable basis for classification or departure from such general statutes. The Court approved the latter cases as being more authoritative.

Appellants insist that no apparent classification has been demonstrated to justify the private legislation at issue here, and we are inclined to agree with that assertion. A single statement by a member of the General Assembly may occasionally assist a court in determining legislative intent in construing an ambiguous statute. The meager legislative history introduced in the present case fails, however, to establish any substantial basis for classification which alone would justify a different method of selection of commissioners for this particular utility district.

▌ Nevertheless, where there is no general state law which is mandatorily applicable, the cases recognize that the General Assembly has almost unlimited discretion to enact private legislation affecting the structure and organization of local governmental units. Illustrative are the cases of *Henry v. Abernathy*, 175 Tenn. 512, 136 S.W.2d 51 (1940) and *Townsend v. Ray*, 174 Tenn. 634, 130 S.W.2d 96 (1939). In those cases, private acts creating special Boards of School Commissioners in particular counties were upheld, despite the fact that there were general statutes prescribing the makeup of local county school boards. Those general statutes, however, had never been considered to be mandatory, and, within themselves, provided for school boards of differing numbers and terms of office. *See, e. g.,* T.C.A. § 49–208. There was not a general mandatory statute as to the membership and tenure of local school boards, indicating a uniform statewide system. Local legislation, departing from the general statutes, was upheld where it was not found to be merely a colorable device to remove particular individuals from office.

There is no contention in the present case that the private act under consideration is of the latter type, designed as a mere ruse or instrumentality to oust the incumbent commissioners.

▌ We are of the opinion that the 1977 Private Act undertakes to deal with the utility district in its governmental or political capacity, materially altering the structure and selection of its governing body, and that it was not designed or intended to confer a special benefit or privilege upon citizens of this particular district within the purview of Article XI, § 8. Popular election, as distinguished from appointment or some other method of choosing a public official, has generally been considered to constitute a method of selection, rather than a personal benefit or privilege to a particular individual. In *Townsend v. Ray, supra*, private legislation authorized election of members of a school commission from local civil districts, rather than appointment by the quarterly county court as provided by general school statutes. *See also Haggard v. Gallien*, 157 Tenn. 269, 8 S.W.2d 364 (1928). In *Whedbee v. Godsey*, 190 Tenn. 140, 228 S.W.2d 91 (1950), officials of a local sanitary district were to be popularly elected, but that private legislation was upheld despite the fact that the Utility District Law of 1937 provided for a different method of selection.

We have already noted that in the *Whedbee* case the Court construed the utility district statutes as being non-exclusive and as not precluding private legislation on the subject. We have also noted that the general statutes themselves authorize many different methods of selection of local commissioners.

We do not find that the present legislation offends any general law which is obligatory or that it violates any uniform state policy for the selection of local officials such as those involved here. Accordingly its enactment lay within the power of the General Assembly, and the attack upon its provisions cannot be sustained.

The judgment of the Chancellor is affirmed at the cost of appellant.

HENRY, C. J., and COOPER, FONES and BROCK, JJ., concur.