**COUNTY OF SHELBY et al.,
Appellants-Appellees,**

v.

**Leonard Ray BLANTON et al.,
Appellants-Appellees.**

Court of Appeals of Tennessee,
Western Section.

July 25, 1978.

Rehearing Denied in Part, Granted in
Part Aug. 25, 1978.

Affirmed by Supreme Court
Jan. 28, 1980.

C. Barry Ward and E. W. Hale, Jr., Memphis, for County of Shelby, et al.

J. Frank Hall, Memphis, for Trustee of Shelby County.

Leo J. Buchignani and John R. Johnson, III, Memphis, for Blanton, et al.

MATHERNE, Judge.

This lawsuit tests the constitutionality of Chapter 260, Private Acts 1974, which restructures the government of Shelby County, Tennessee.

The plaintiffs appeal from all findings of the chancellor upholding the constitutionality of chapter 260, and they also insist that the statute can not stand with the provisions found to be violative of the constitution deleted therefrom. The defendants appeal from the findings of the chancellor that certain portions of the act violate the constitution. We will not treat the assignments of error individually, but will cover the issues presented under appropriate headings.

I. CHAPTER 260, PRIVATE ACTS 1974

The record reveals that for approximately five years prior to the passage of chapter 260, various citizens, officials, and legislators of Shelby County had attempted to have enacted a private act to restructure the government of the county. During the 1974 legislative session the legislators of Shelby County presented a proposed act to the quarterly county court. That body approved the proposed statute. The legislators then had the proposal enacted into law as Chapter 260, Private Acts 1974.

This statute changes the form of Shelby County government from a commission/county court government to mayor/county court government. The Act vests the executive function in the county mayor, separating it from the legislative function vested in the county court. It was noted in *Farris v. Blanton* (Tenn.1975) 528 S.W.2d 549, that the form of government thus created for Shelby County is unique and stands alone among the 95 counties of the state. Section 2 of the Act provides that it shall have no effect unless it is approved by a majority of the voters voting in an election to be held for such purpose in the August 1974 general election. If the Act were to be approved in the referendum, an election was to be called October 9, 1974, for the election of the first mayor, who would take office on January 1, 1976. During the interim period from September 1, 1974, until the new mayor would take office, the Act created a County Executive Committee and named thereto Jack W. Ramsay, James W. Moore, and Lee Hyden, the then commissioners of Shelby County. This executive committee was to perform all functions previously performed by the Shelby County Board of Commissioners during the period from September 1, 1974, through December 31, 1975. Section 11 of the Act provides that the Act shall have no effect unless it is approved by a two-thirds vote of the quarterly county court within forty-five days after its passage. The Act was signed by the Governor of Tennessee on March 21, 1974.

The Shelby County Quarterly Court unanimously ratified chapter 260 on April 22, 1974. The question of ratification was submitted to the people in the August 1974 general election. The vote was 44,115 for

the Act and 25,784 against. The executive committee set up by the Act began to function and the first county mayor was elected on October 9, 1974. The county mayor assumed his duties on January 1, 1976, and the executive committee named in the Act was dissolved.

The plaintiffs in the present lawsuit are the County of Shelby, acting by and through its quarterly county court; the Chairman of the quarterly county court, as chairman and individually; and six members of the quarterly county court, suing as members and individually.

The defendants are the Governor of the State of Tennessee, the secretary of state and the attorney general of the State of Tennessee, the Executive Committee of Shelby County set up by chapter 260 and the members thereof, and various elected and appointed officials of Shelby County, Tennessee.

The complaint seeks a declaratory judgment as to the constitutionality of chapter 260; an adjudication on certain portions of the Act claimed to be ambiguous and vague; an injunction prohibiting the executive committee from functioning; an order determining what officials may sign bonds and warrants of Shelby County; and general relief.

On two prior appeals to this court from two interlocutory orders of the chancellor we held that: (1) the plaintiffs were not barred from bringing this action because of laches, judicial estoppel or equitable estoppel; (2) the statute was upheld by a majority of votes cast in an election held for that purpose; (3) the statute does not embrace more than one subject, and it recites in its caption, or otherwise, the title or substance of the laws sought to be repealed or amended; (4) the issue of whether the appointment of the executive committee for the interim period prior to the election of the mayor was proper had become moot because their interim term had expired. This court refused to accept all other questions of law certified by the chancellor and remanded for final judgment on all issues. There was no petition for writ of certiorari

filed with the supreme court, and those holdings have now become final.

On remand no additional proof was presented. The chancellor treated the issues as rejected by this court on the prior appeals as the issues to be determined on remand. Those issues are:

(1) Is it within the power of the Tennessee General Assembly to enact legislation by Private Act affecting a county in the form or instrumentalities of its government, which legislation may have the effect of excluding said county from the operation of the general law of the State controlling the government of counties, or is such legislation unconstitutional as violative of Article 11, Section 8, of the Tennessee Constitution?

(2) Does the veto power granted in Chapter 260 of the Private Acts of 1974 by the Legislature to the Executive Branch of Shelby County Government violate the separation of powers doctrine contained in Article 11, Sections 1 and 2 of the State Constitution?

(3) Is Chapter 260 so vague and ambiguous that men of common intelligence must necessarily guess at its meaning and is it therefore void for vagueness under the due process clauses of the Tennessee Constitution and Fourteenth Amendment to the Federal Constitution?

(4) Is paragraph 10 of sub-section 5 of Section 4.03 of Chapter 260 constitutional?

(5) Who under existing law is authorized to sign and co-sign general county warrants?

(6) Who under existing law is required to sign and co-sign county bonds, tax anticipation notes and bond anticipation notes?

(7) Who is entitled to establish a depository for county funds?

(8) Can the fee-officers establish their own bank accounts in their own chosen banks pursuant to T.C.A. § 5–816, 817 and 818?

## II. THE 1978 AMENDMENT TO THE CONSTITUTION

The defendants insist that on March 7, 1978, the citizens of Tennessee approved amendments to the constitution which calls for the same form of county government as is set out for Shelby County by Chapter 260, Private Acts 1974. The defendants claim that the implementing legislation, Chapter 934, Public Acts 1978, repeals all statutes in conflict therewith and sets up a form of county government as required by the amendment to the constitution. The implementing legislation does not become fully effective until September 1, 1978. The defendants argue that Chapter 260, Private Acts 1974, is in compliance with the new constitution and should for that reason be upheld.

■ In *Duncan v. Rhea County* (1955) 199 Tenn. 375, 287 S.W.2d 26, the plaintiff challenged the validity of Chapter 570, Private Acts 1953, which abolished the Court of General Sessions of Rhea County. It was argued that an amendment to the constitution, effective November 19, 1953, provided that the legislature could not by private act remove an incumbent from any county or municipal office. The court noted that the private act in question was effective on April 10, 1953, and since the constitutional amendment did not purport to have retroactive effect, the private act was not affected thereby. In accordance with this decision, we hold that the 1978 amendment to the constitution and the legislation implementing those changes can not be relied upon to give validity to an act in effect prior to the effective date of the amendment, unless the amendment contains an express retroactive provision or expressly refers to the act. See *Etchison Drilling Co. v. Flournoy* (1912) 131 La. 442, 59 So. 867; 1 Cooley's Constitutional Limitations 129 (8th Ed. 1927).

## III. CHANGING THE FORM OF GOVERNMENT OF A PARTICULAR COUNTY

■ The legislature may change the form of government of a particular county, and in so doing it may divest the quarterly county court of all powers not conferred upon it by the constitution. *Prescott v. Duncan* (1912) 126 Tenn. 106, 148 S.W. 229; *Troutman v. Crippen* (1937), 186 Tenn. 459, 212 S.W.2d 33; *Donathan v. McMinn County* (1948) 187 Tenn. 220, 213 S.W.2d 173. The legislature may place those divested powers in the county instrumentality of its choice. *Shelby County Bd. of Com'rs. v. Shelby County Quarterly Court* (1965) 216 Tenn. 470, 392 S.W.2d 935. The constitution confers upon the quarterly county court the power to appoint one coroner and one ranger (art. 7, sec. 1); to fill vacancies in the offices of sheriff, trustee and register of deeds (art. 7, sec. 2); to act upon bills of a local nature when authorized to do so by the legislature (art. 11, sec. 9); and to fill any county office created by the legislature when authorized to do so (art. 11, sec. 17).

■ If, however, some portion of the statute which restructures the county government contravenes general law mandatorily applicable to all counties in the state, the act to that extent would violate article 11, section 8 of the constitution unless the special classification rests upon a reasonable basis. *Crewse v. Beeler* (1948) 186 Tenn. 475, 212 S.W.2d 39.

Based upon the foregoing general propositions of constitutional law, we will now review the specific attacks made against chapter 260.

## IV. THE FEE–OFFICERS

The plaintiffs argue that those portions of chapter 260 which purport to take the fee-officers of Shelby County out of the provisions of the anti-fee statutes contravene a general law mandatorily applicable to all counties without a reasonable basis for the special classification. The fee-officers are the sheriff, trustee, register of deeds and the clerks of the various courts, who render services to the public and collect fees therefor.

The anti-fee statutes are codified as T.C.A. § 8–2001—2011, 8–2201—2221, 8–2401—2413. These statutes result from a

series of legislative enactments beginning in 1921 and extending through 1977. The general scheme of the anti-fee statutes is to set for each fee-officer a minimum salary (8–2405) and a maximum salary (8–2403) based upon eight classifications of counties on a population basis (8–2402). These officers are allowed to collect the fees, pay their salaries, the salaries of their employees and office expenses out of the fees collected, and remit to the county any excess fees collected.

The second and third sentences of paragraph 10 of subsection 5 of section 4.03 of chapter 260 purport to remove the fee-officers from the general law by the following provisions:

> The Director of Finance shall establish one or more bank accounts as depositories for the treasury into which each county official, whether elected or appointed, and each county office shall pay within three days after receipt thereof all fees and other moneys collected, intact, including state and federal moneys, and shall render such daily or as often as the Director of Finance requires. The Director of Finance shall transmit to the state all moneys collected for the state in accordance with applicable state laws.

The chancellor found the foregoing to be violative of article 11, section 8 of the constitution, and also violative of the due process clauses of the state and federal constitutions because it is so vague that men of common intelligence must necessarily guess at its meaning and application. As a consequence of that finding, the chancellor held that the foregoing provision be elided from chapter 260, along with the following portion of paragraph 12 of subsection 5 of section 4.03 of chapter 260:

> Every obligation incurred and every authorization of payment in violation of the provisions of this Act are void. Every payment made in violation of the provisions of the Act is illegal, and all county officials who authorize or make such payment or any part thereof are jointly and severally liable to the county for the full amount so paid or received. If any coun-

ty official makes any payment or incurs any obligation or takes part therein in violation of the provisions of this Act, that action shall be cause for his discharge from employment.

■ The defendants argue that the anti-fee statutes are mandatorily applicable only as applied to the salaries of the fee-officers. We disagree. We hold that the anti-fee statutes express the public policy of the state on how fees collected by county officials shall be collected, expended and accounted for. Compare *Hobbs v. Lawrence County* (1952) 193 Tenn. 608, 247 S.W.2d 73. See also *Sapp v. State ex rel. Nipper* (1975) 524 S.W.2d 652, wherein certain provisions of the anti-fee statute which govern the hiring of deputy sheriffs were held not violative of the separation of powers provision of the constitution. We fail to find a single reported decision where the anti-fee statute was not upheld and the acts of local governmental bodies or the legislature stricken where the two conflicted.

The defendants rely heavily on the case of *Robinson v. Briley* (1963) 213 Tenn. 418, 374 S.W.2d 382, wherein the court approved a plan of the Metropolitan Government of Nashville and Davidson County which required the county trustee to pay in to the metropolitan treasurer all amounts collected daily. It must be remembered that the metropolitan government there under consideration was formed under the provision of article 11, section 9 of the constitution. Those provisions allow the consolidation of the governments of a county with the municipalities within the county. The court in *Robinson* relied on the former cases of *Frazer v. Carr* (1962) 210 Tenn. 565, 360 S.W.2d 449 and *Winter v. Allen* (1963) 212 Tenn. 84, 367 S.W.2d 785. The court in *Robinson* observed that it would be impossible to consolidate any local governmental functions if all of the earlier general laws establishing unconsolidated municipal and county agencies should remain applicable. The constitutional authority to consolidate and the enabling legislation (T.C.A. § 6–3701, et seq.), permit "the consolidation of any and all" of the functions of local

government, which would include the consolidation of the office of trustee with any other office and a definition of the duties of the trustee separate and distinct from the general law on the subject. The case at bar differs in that it does not involve article 11, section 9 or its enabling legislation, therefore we must here consider the general statutes mandatorily applicable to all counties.

■ We agree with the chancellor that paragraph 12 and the second and third sentences of paragraph 10 of subsection 5 of section 4.03 of chapter 260 contravene general law (anti-fee statutes) mandatorily applicable to all counties and there is no reasonable basis for the special classification. Those provisions of chapter 260 are not applicable to the fee-officers of Shelby County, but may be applicable to other county officers and for that reason they will not be elided from the act. The decree of the chancellor is modified accordingly. We hold that paragraph 10 of subsection 5 of section 4.03 is not so vague as to render it violative of the due process clauses of the state and federal constitutions.

## V. THE MAYOR'S VETO POWER

Subsections 11 and 12 of section 3.06 of chapter 260 provide that the county mayor shall:

11. Have a veto power over all resolutions as herein before provided.

12. Have a veto power over the annual budgets of the County which he may exercise by vetoing specific items or parts of items without invalidating the whole. The veto shall be exercised and may be overridden by the same procedure as provided in Section 2.03, subsection 1.

Subsection 1 of section 2.03 provides that the county court may override a veto by a vote of "a majority of all the members comprising the County Court. . . ."

■ The chancellor held that the veto power vested in the county mayor by chapter 260 is constitutional. We agree that the legislature may constitutionally vest veto

power in a county mayor of a particular county. That provision of a legislative enactment must not, however, run afoul of various constitutional prohibitions. We therefore agree only in part with the chancellor's holding on this issue.

■ The plaintiffs call to our attention the provisions of the County Recovery and Post War Aid Act of 1945, wherein it was enacted that a bond resolution passed by the governing body of a county under the provisions of that statute would not "be subject to veto by the chief executive officer of the county or presiding officer of the governing body . . . ." T.C.A. § 5–1122. We hold that this statute is mandatorily applicable to all counties, and that there is no reasonable basis for excluding Shelby County from its express provision which denies the executive the power to veto a bond resolution passed pursuant to its terms.

■ We hold that the veto power given the county mayor under chapter 260 may not be exercised to contravene the express denial of that power as stated in a general act mandatorily applicable to all counties of the state, where there exists no reasonable basis for the special classification.

We, accordingly, modify the chancellor's decree as it relates to the veto power of the county mayor.

## VI. THE AUTHORITY TO EXECUTE BONDS, NOTES and WARRANTS ON BEHALF OF THE COUNTY—THE SELECTION OF THE COUNTY DEPOSITORY

### A. APPLICABILITY TO COUNTY SCHOOL SYSTEM FINANCING

■ The plaintiffs argue that chapter 260 contravenes T.C.A. §§ 49–201 through 49–207 and 49–701 through 49–721. Those statutes relate to the administration and financing of the county's school system. Subsection 19 of section 4.03 of chapter 260 provides that "[t]he provisions of this Act do not apply to county school funds for any purpose, or to the County Board of Educa-

tion or the County Superintendent of Education." We, therefore, hold that chapter 260 does not reach the general statutes referred to, and that it may stand as not being in contravention of those enactments.

## B. SIGNING OF WARRANTS

■ The plaintiffs contend that chapter 260 contravenes general law set out in T.C.A. §§ 5–912, 5–916, 5–608, 5–610, and 5–612, which designates the county judge or chairman as the financial officer of the county, and authorizes the issuance of warrants only upon the signature of that officer. In contravention thereof, chapter 260 provides that the director of finance, appointed by the county mayor, shall be in charge of fiscal management. Subsection 5 of section 4.03. Chapter 260 provides that "[t]he Director of Finance shall pay money from county funds by checks or warrants only which have been approved by the County Mayor and the Director of Finance and signed by both either in person or by facsimile." Paragraph (10) of subsection 5, section 4.03, chapter 260.

The plaintiffs insist that the foregoing provisions of chapter 260 contravene the general statutes cited and thereby violate section 8 of article 11 of the state constitution. In *Troutman v. Crippen* (1937) 186 Tenn. 459, 212 S.W.2d 33, a similar question was raised in opposition to a private act which restructured Knox County by placing all administrative powers in a board of commissioners. The court, citing *House v. Creveling* (1922) 147 Tenn. 589, 250 S.W. 357 and *Prescott v. Duncan* (1912) 126 Tenn. 106, 148 S.W. 229, held that the legislature may deprive the county court of all power not conferred upon it by the constitution and vest it in such agencies as it deems proper to create for the purpose of administering the affairs of the county. The court held that where the only change is with respect to the instrumentality selected to administer the law and the rights of citizens in their individual relations were not affected, there was no constitutional prohibition to the private act.

The signing of warrants is an administrative duty which may be transferred to the county mayor and director of finance. We affirm the chancellor in his holding that the county mayor and the director of finance are the proper persons to sign warrants on Shelby County.

## C. SELECTION OF COUNTY DEPOSITORY

Chapter 260 does not specifically state who shall select the county depository. Chapter 481, Private Acts 1917, provides that the county court, acting through its chairman, shall advertise annually for bids from banks for the handling and custody of all county funds. The county court is authorized to receive the bids and to let out the deposit of the county's funds to the best bidder.

Section 3.01 of article III, chapter 260 provides that all "(e)xecutive and administrative powers of the Shelby County Government shall be vested in and exercised by the County Mayor. . . ." Section 2.02, article II, chapter 260, which deals with the legislative powers vested in the county court, provides that:

> Whenever any Public or Private Act of the State purports to authorize the County Court or its Chairman to perform any administrative or executive act or function, then such act or function shall be performed by the County Mayor.

Subsection 9 of section 4.06, article IV, chapter 260, provides that "(a)ll laws and parts of laws in conflict herewith are hereby repealed."

■ We hold that the selection of a county depository is an administrative function and that the county mayor is the person authorized to select the depository. Compare *Shelby County Bd. of Com'rs. v. Shelby County Quarterly Court* (1965) 216 Tenn. 470, 392 S.W.2d 935. We agree with the chancellor that the county mayor must, however, follow the provisions of Chapter 481, Private Acts 1917 in the selection of the depository and in the management of county funds with the depository. The only portions of Chapter 481, Private Acts 1917

which were rendered ineffective by Chapter 260, Private Acts 1974, are those provisions which place in the county court and the chairman of the county court the authority to select the depository.

### D. SIGNING OF BONDS, BOND ANTICIPATION and TAX ANTICIPATION NOTES

■ Chapter 260 does not designate the person or official authorized to sign bonds, bond anticipation notes and tax anticipation notes on behalf of Shelby County. We agree with the chancellor that chapter 260 does not supersede the general law in this respect. The following language of the chancellor is adopted by this court:

[a]ll action required or authorized to be taken pertaining to the issuance, advertisement for bids, acceptance of bids for sale, the sale and the execution of Bonds, Tax Anticipation Notes and Bond Anticipation Notes shall be done by the County Court and/or its Chairman as provided in Tennessee Code Annotated sections:

5–313 through 5–321, inclusive

5–1101 through 5–1126, inclusive

6–2901 through 6–2916, inclusive

49–201 through 49–205, inclusive

49–701 through 49–721, inclusive

We note that sections 2.01 and 2.02 of article II, chapter 260 set out the legislative powers of the county court. Section 2.01 vests all legislative power of the county in the quarterly county court and further provides that:

The legislative power includes all lawful authority to adopt resolutions governing the operation of government or regulating the conduct and affairs of the residents of the county, to fix the county tax rate, to adopt the county budget, to make appropriations of county funds for all legal purposes, and to exercise all other authority of a legislative nature which is vested in the county by the Constitution, general statutes, or special, local or private acts of the General Assembly. The Legislative Branch may adopt any resolution which is not in conflict with the Constitution of the State of Tennessee or this chapter.

Section 2.02. Other Powers. The Legislative Branch is vested with all other powers not specifically or by necessary implication vested by the Constitution or by statute not inconsistent with this Act in some other official of the County.

■ We hold that under the foregoing provisions of chapter 260, and also the provisions of section 3.01 of article III of the Act, only the executive and administrative powers of the Shelby County Government were vested in the county mayor. The signing of bonds is not solely an executive or administrative function of county government, and it is, therefore, not within the limited powers vested in the county mayor. In accordance with the terms of chapter 260 above quoted we hold that the signing of bonds, tax anticipation notes and bond anticipation notes is an integral part of the legislative function of issuing bonds, and in the absence of a specific provision giving the county mayor authority to sign those instruments that power will not be extended to that official by implication.

The foregoing disposes of all issues raised by all assignments of error and a decree may be entered in this court in accordance with this opinion. The cost in this court is adjudged against Shelby County, Tennessee.

EWELL, J., and TATUM, Special Judge, concur.

### ON PETITIONS TO REHEAR

MATHERNE, Judge.

The parties have filed their respective petitions to rehear and for clarification of this court's opinion as filed on July 15, 1978.

Shelby County insists that this court erred in holding that the "selection of a county depository is an administrative function and that the county mayor is the person authorized to select the depository." It is pointed out that subsection 18 of section 4.03 of chapter 260 of the Private Acts of 1974 provides as follows:

Contracts and purchases on behalf of Shelby County Government shall be entered into as follows:

(1) Up to $50,000.00 by the County Purchasing Agent as approved by the County Mayor.

(2) Over $50,000.00 by the County Purchasing Agent as approved by the County Mayor and the County Court.

Shelby County argues that a contract with a county depository involves deposits in excess of $50,000.00 and, therefore, requires the approval of the county court. We were mindful of the quoted statutory provision when preparing our original opinion. We adhere to our holding that the *selection* of a county depository is an administrative function vested in the county mayor, conditioned as stated in the opinion. It matters not that several million dollars may accumulate in the depository selected, those county funds are not expended, pledged or otherwise incumbered by the *selection* of a depository for the funds. We hold that the quoted statutory provision has no application to the selection of a county depository, and that ground for a rehearing is overruled.

Shelby County further argues that we erred in holding that paragraph 10 of subsection 5 of section 4.03 is not so vague as to render it violative of the due process clauses of the state and federal constitutions. This ground for a rehearing is overruled because it merely asks for a redetermination of an issue expressly ruled upon in the original opinion.

Shelby County points out that this court erroneously stated that the first mayor was elected on October 9, 1974, when in fact he was elected on October 9, 1975. We agree that the date as we stated is erroneous, and our opinion is hereby amended to show that an election was held and the first mayor was elected on October 9, 1975.

■ The defendant members of the Shelby County Executive Committee and the county mayor petition for a rehearing on Issue No. (8) as considered by the chancellor. That issue is: "(c)an the fee officers establish their own bank accounts in their own chosen banks pursuant to T.C.A. §§ 5–816, 817 and 818?" This ground for a rehearing is well taken and will be considered by this court. We hold that T.C.A. §§ 5–816, 817 and 818 must be construed in *pari materia* with the anti-fee statutes as concerns the fees and excess fees collected by the fee-officers. We further hold that T.C.A. §§ 5–816, 817 and 818 are general statutes mandatorily applicable to the handling of public funds held by the fee-officers, and there is no reasonable basis shown for excluding the fee-officers of Shelby County, Tennessee from those general statutes. We hold that the fee-officers of Shelby County will continue to operate in every aspect of their office under the provisions of general law. It results that our answer to Issue (8) above stated is—yes.

These same defendants again argue that the county mayor and the county director of finance are the proper parties to sign county bonds, tax anticipation notes and bond anticipation notes. We adhere to our previous ruling that the signing of bonds is a part of the legislative function of issuing bonds; the same holds true for bond anticipation notes and tax anticipation notes. No legislative authority was vested in the county mayor. This ground for a rehearing is overruled.

It results that all petitions to rehear except as herein considered are overruled at the cost of the petitioners.

EWELL, J., and TATUM, Special Judge, concur.