SHELBY COUNTY CIVIL SERVICE
MERIT BOARD, et al.,
Plaintiffs-Appellees,

v.

Robert F. LIVELY,
Defendant-Appellant,

and

Gene Barksdale, Sheriff of Shelby County, Tennessee, Intervenor-Appellee.

Supreme Court of Tennessee,
at Jackson.

June 10, 1985.

Alan Bryant Chambers, Memphis, for defendant-appellant.

Dan M. Norwood, Memphis, for plaintiffs-appellees.

H. Wallace Maroney, Jr., Memphis, for intervenor-appellee.

## OPINION

HARBISON, Justice.

This case involves the constitutionality of a portion of 1971 Tenn.Priv.Acts ch. 110, creating a civil service system for county employees, including the employees of certain county officials, in Shelby County, Tennessee. The Act is comprehensive in scope. Only one portion thereof is challenged in this case. Insofar as pertinent here, the statute purports to eliminate the authority of certain county officials to terminate their deputies at will and to place such deputies under the civil service system, removable only for cause.

In enacting the private act, the General Assembly recognized that a general public statute, T.C.A. § 8–20–109, makes the deputies and assistants of certain officers, including the county sheriff, removable at will. That general statute was a part of 1921 Tenn.Pub.Acts ch. 101, § 18. It applies to clerks and masters, county clerks, clerks of probate, criminal, circuit and special courts, county trustees and registers of deeds as well as county sheriffs.

In the 1971 private act involved here, the General Assembly expressly exempted Shelby County from the provisions of T.C.A. § 8–20–109, *supra.* The question involved is whether it could lawfully do so or whether the private act is invalid as contravening the provisions of Tenn. Const. art. 11, § 8, which proscribes improper special legislation. The Chancellor held the private act unconstitutional insofar as it contravened the general statute. He found it to be invidious class legislation and that

it stated no reason why the general statutes should be applicable.

The litigation does not specifically challenge the status of all persons employed by the county sheriff, but only those commissioned as deputies. The record shows that the sheriff's office has over 550 employees, but of these only 350 are actually deputized. The others are various kinds of secretaries, clerks and administrative officials. Seemingly no question is raised as to the placing of these persons under the civil service system created in the private act.

Further, for thirteen years after the enactment of the private act in 1971, deputies were considered to be under the civil service system. Indeed it is apparently conceded that they are under that system for purposes of employment, promotion and discipline and all other purposes except for termination. The narrow question directly presented in the present case is whether or not a deputy may be discharged by the sheriff at will. Prior to the instant litigation a number of deputies had been disciplined or discharged by the Sheriff's Department, and their cases had regularly been reviewed by the Civil Service Merit Board and thence by the courts, as though they were civil service employees. In some of the cases deputies who had been discharged by the Sheriff were ordered reinstated by the Civil Service Board, and the courts enforced those orders. The present case is the first in which the authority of the Civil Service Merit Board to review a discharge by the Sheriff has been timely and directly raised. Public officials such as the Sheriff are not ordinarily subject to estoppel, as suggested by appellant. In all events, the Civil Service Merit Board, which instituted the present action for a declaratory judgment, is not estopped to have its authority and duties properly adjudicated.

Many years ago this Court said:

"Civil service laws tend to promote the efficiency of governmental employees and, we think, should be regarded with favor. The Legislature has by special acts provided civil service laws for policemen and firemen in a number of municipalities of the State. The constitutionality of such laws seems not to have been questioned, so far as our reported decisions disclose." *City of Knoxville v. State ex rel. Hayward*, 175 Tenn. 159, 167, 133 S.W.2d 465, 468 (1939).

There the Court sustained a private act creating a civil service and tenure system for teachers in the Knoxville city schools, finding no conflict therein with the general education statutes. *See also City of Nashville v. Martin*, 156 Tenn. 443, 3 S.W.2d 164 (1928), upholding a civil service system for policemen, firemen and other employees of the City of Nashville. In that case, citing previous decisions, the Court said that it had been established:

"... that the Legislature might freely prescribe the terms and conditions upon which employees of the state or of the municipalities of the State should work, unhampered by Section 8 of Article 1, of the Tennessee Constitution and the Fourteenth Amendment to the Federal Constitution.... Under the authorities ..., it is competent for the Legislature to provide for the character of State employees, the things they shall do, their hours of labor, and it of course follows that the Legislature can stipulate the terms or periods of employment." 156 Tenn. at 449, 3 S.W.2d at 166.

We do not understand that appellees seriously question these principles or the authority of the General Assembly to place deputies of specific county officials under civil service systems. The office of sheriff, of course, as well as those of several other county officials, is a constitutional one. *See* Tenn. Const. art. 7, § 1. The constitution, however, does not fix or prescribe the duties of the office or deal with employment of personnel. This has long been done by statute. The provisions of T.C.A. §§ 8–20–101 to –112 provide for the employment of deputies and assistants to the sheriff and to certain other county officers,

usually referred to as "fee officers."[1] Applications for such employment are made to the judge of one of the courts, such as a circuit, chancery or criminal court. This procedure was followed by the Sheriff of Shelby County. Although a different system might be devised by the General Assembly, the existing system has been held valid. *See Sapp v. State ex rel. Nipper,* 524 S.W.2d 652 (Tenn.1975). It is a part of that general system which contains the provisions of T.C.A. § 8–20–109, making *all* deputies and assistants in any of the offices covered by the statute removable at will by the officer for whom they are acting.[2] Nevertheless, in this case the Sheriff does not contend that all of his employees are terminable at will or exempt from the civil service discharge provisions, but only those specifically commissioned by him as deputies.

This is not an exact interpretation of either the general act or the private act, because the general statute makes "any and all" deputies and assistants terminable at will. If the private act cannot apply to deputies, then we do not see how it could logically be applied to clerks, secretaries, dispatchers or other noncommissioned personnel in the sheriff's office or to employees of any of the other officers covered by T.C.A. § 8–20–101.

The principal reason that the sheriff urges for making deputies dischargeable at will, rather than subject to civil service review, is that a deputy has sometimes been said to be the "alter ego" of the sheriff and to act in his place and stead. At one time the sheriff was civilly liable for the actions of his deputies. For this reason it was felt that the sheriff must have the authority to discharge a deputy at will. *See* discussion in *Metropolitan Govern-*

*ment of Nashville & Davidson County v. Poe,* 215 Tenn. 53, 71–75, 383 S.W.2d 265, 273–275 (1964). In that case it was held that the duties of a county sheriff as chief law enforcement officer could validly be transferred to a metropolitan police department, and the sheriff deprived of most of his traditional duties. The sheriff was held to be subject to the budgetary and purchasing provisions of the metropolitan charter. He was also held subject to the civil service provisions of the Metropolitan Government as to persons employed in a consolidated city-county workhouse, except for the superintendent. The latter was deemed to be a "personal appointee" of the sheriff under the "alter ego" theory.

The "alter ego" aspect of the office of sheriff has been substantially modified, if not eliminated, by the General Assembly. By 1972 Tenn.Pub.Acts ch. 800, now codified at T.C.A. § 8–8–301 to –303, the sheriff and his official bondsmen have been relieved of civil liability for actions of deputies, and much of this liability has been transferred to the county in which the sheriff serves.

In addition, by 1974 Tenn.Pub.Acts ch. 751, now codified as T.C.A. §§ 8–8–401 to –419, county legislative bodies have been authorized to adopt the "County Sheriff's Civil Service Law of 1974."

Under this law all positions and employees in a sheriff's department except for the sheriff himself, his personal secretary and the cook for the jail, are made subject to civil service in those counties adopting the statute. In addition those counties may also make the chief deputy sheriff subject to civil service, or not, as they see fit. To date thirteen counties have adopted this statute.[3]

---

1. The 1921 statute creating this system was one of a series of "anti-fee" bills enacted by the General Assembly. These statutes govern the salaries and expenses of these officers as well as the revenues from their offices. *See County of Shelby v. Blanton,* 595 S.W.2d 72, 77–78 (Tenn. App.1978).

2. Nothing in the record before us indicates that any other system is utilized in the authorizing of

personnel for the other Shelby County officials covered by T.C.A. § 8–20–101. Some special statutes do authorize direct appointment of deputies, such as T.C.A. § 8–9–105 governing coroners and T.C.A. § 10–7–113 dealing with county registers.

3. Civil service systems for employees of Sheriff's Department, have been established under this statute in Anderson, Carter, Claiborne, Dickson,

Both the 1972 and the 1974 legislation above cited were enacted subsequent to the private act under consideration here. Both, however, evince a legislative purpose to modify substantially the previous conception of a deputy sheriff as the "alter ego" of the elected sheriff. The 1974 statutes clearly modified the provisions of T.C.A. § 8–20–109, making the tenure of deputies and other assistants to the sheriff purely at will. Indeed T.C.A. § 8–20–112, enacted as 1984 Tenn.Pub.Acts ch. 912, expressly provides:

"In any county having a civil service system for the sheriff's department pursuant to title 8, chapter 8, part 4, or the provisions of a private act, or a civil service system for all county employees pursuant to the provisions of a private act, the employment or termination of employment of any deputy or assistant in any offices covered by this chapter shall be pursuant to the provisions of such civil service system and the provisions of § 8–20–109 shall not apply to such county." [4]

Again, this statute was not in force when the private act in question was adopted, but it evinces present legislative policy with respect to the nature and duties of the office of a deputy sheriff, as well as deputies and assistants of other county officials.

■ It is apparent, as recognized by the General Assembly, that there is conflict between the provisions of the private act in question here and the general state statutes as they stood when the private act was adopted. Almost any county civil service system would conflict with the general statutes if it involved employees of the

county officers covered by T.C.A. § 8–20–101.[5] Nevertheless, it is well-settled that in the structuring of county and municipal governments, the General Assembly has broad authority. This is almost unlimited when private legislation does not contravene some mandatorily applicable general state law. See Rector v. Griffith, 563 S.W.2d 899, 904 (Tenn.1978). When there is such a general state law, however, it may not be suspended by a private act "unless there is some reasonable basis for classification or departure from general statutes." Ibid.; see also Brentwood Liquor Corp. of Williamson County v. Fox, 496 S.W.2d 454 (Tenn.1973).

■ It is well settled that a "reasonable basis" for legislation does not have to appear on the face of a statute, as suggested by the Chancellor. Early in this century the Court said:

"But while the Courts frequently find and assign reason for legislative classification, yet it is by no means uniformly so. And it does not follow, because the reason for the classification is not disclosed in the face of the Act, that it is necessarily without reason and capricious. Reasons eminently wise and provident might control the law-making body, which do not appear upon the face of a statute, and for the Courts to strike it down, because not readily perceptible, might well be criticized as an act of judicial usurpation." Condon v. Maloney, 108 Tenn. 82, 96, 65 S.W. 871, 874 (1901).

An examination of the personnel of the Sheriff's Department of Shelby County, exhibited in the record with an order of the

---

Fentress, Franklin, Greene, Hamilton, Hardeman, Hardin, Henry, Marshall and Unicoi Counties.

**4.** In five other counties besides Shelby, private acts authorize civil service systems for employees of the sheriff. These are Blount (1972 Tenn. Priv.Acts ch. 332); Knox (1970 Tenn.Priv. Acts ch. 326); Loudon (1973 Tenn.Pub. Acts ch. 169); Madison (1983 Tenn.Priv. Acts ch. 54) and Maury (1967 Tenn.Priv. Acts ch. 475). In addition, there is a comprehensive civil service system in the Metropolitan Government of Nashville and

Davidson County, including most of the employees of the Sheriff and of the Metropolitan Police Department, as discussed in the Poe case, supra.

**5.** Cf. Robinson v. Briley, 213 Tenn. 418, 374 S.W.2d 382 (1962) (noting that the consolidation of city and county governments into a metropolitan government required departure from the older general statutes regulating the trustee's office, including the transfer of civil service employees into that office; charter provisions conflicting with the general statutes upheld).

Criminal Court authorizing their employment, reveals that the Sheriff, in effect, operates a substantial urban police force. The authorized personnel include a chief deputy, an executive assistant chief, two administrative assistants, one chief jail administrator, four assistant chiefs, seven inspectors, eighteen captains, fourteen deputy jailers of two different classes, forty-six lieutenants, forty-six sergeants, thirty-four deputy jailers of a third class, 243 patrolmen, and 263 deputy jailers of two additional classes, in addition to various clerks, maintenance, custodial and other employees of many different classifications.

In this case the Sheriff only contends that his commissioned deputies are subject to termination at his will, and apparently does not question that the other two hundred or more employees are subject to civil service. We think that this is a strained interpretation of T.C.A. § 8-20-109, at best, as previously pointed out.

An examination of the roster of the Sheriff's office makes it self-evident that the department employs hundreds of persons. While size alone is not necessarily a distinguishing characteristic in the classification of counties, the number of employees involved may well be. It was obvious to the General Assembly, as it is to this Court, that Shelby County, as the largest county in the state, has large numbers of employees of many different types. With respect to the sheriff, it is one thing for such an officer to have two or three "alter egos" in a small office. It is quite different to have three hundred and fifty "alter egos." We do not believe that the "alter ego" concept is very significant in the resolution of this case.

It is our opinion that the General Assembly classified Shelby County separately with respect to the civil service status of deputies sheriff, as well as employees of many other county officials, because of the number and complexity of the county personnel and because of its desire to place all of the "assistants and deputies" of the Sheriff, as well as those of other county officers, under a tenured civil service system. We believe that this was a legitimate legislative objective, and that in this instance size and complexity of the organizations involved do represent a reasonable basis for distinguishing Shelby County from other county and municipal governments in the state. Many of the other counties have a very limited force of deputies and other county employees. Thus, although at the time it was enacted, the private act was contrary to the general statute on the removal power of the Sheriff over his deputies and assistants, we believe that a reasonable basis existed for the classification and for departure from the general statute. In our opinion there is no violation of art. 11, § 8.

This was the only basis upon which the constitutionality of the private act was attacked. The act was ratified by the local government in accordance with the home-rule provisions of the state constitution, and no other basis for invalidity has been suggested.

As stated at the outset of this opinion, the creation of a civil service system for a local government is a legitimate objective of the General Assembly, and one which it may accomplish within rather broad limits. To this end, in our opinion, it may suspend the older general statutes making employees of certain county officers terminable at will. It may classify counties in a reasonable manner and structure the method and manner of employment of county personnel accordingly. It has done so in this case, as it has done with respect to several other counties. It long ago did so with respect to the salaries of county officers. *See* T.C.A. §§ 8-24-101 to 115.

In our opinion authorization of a civil service system, alone, is a sufficient basis upon which the General Assembly may validly rest special legislation with respect to the structure of local governments. There is no constitutional requirement that deputies sheriff or other county employees hold their offices at will, for a definite term, or under civil service. This is a matter for legislative determination, and we find the Act under consideration to be valid.

**20**

The impact of the decision of the Chancellor upon the Shelby County Civil Service System could be substantial. We find no basis in the record for distinguishing deputies sheriff from noncommissioned personnel in the Sheriff's Department or from employees of other county "fee" officers. "Any and all" deputies and assistants in the county officers' employ are subject to termination at will under T.C.A. § 8–20–109. The Civil Service Merit System covers personnel of all county officials who have three or more employees. If the 1971 private act cannot apply to deputies, then numerous other county employees might also be deprived of civil service status. This was not the legislative intent, obviously. We believe that the General Assembly had a reasonable basis to confer that status upon the employees of this large urban county and to suspend the general employment law with respect to that county. It re-structured much of the government of Shelby County in 1974 and in doing so gave no indication that it intended to affect the civil service status of county employees which it had authorized in 1971. *See Shelby County v. Blanton,* 595 S.W.2d 72 (Tenn.App.1978); *see also Farris v. Blanton,* 528 S.W.2d 549 (Tenn.1975).

The judgment of the trial court is reversed. The cause will be remanded to that court for any further proceedings which may be necessary. Costs of the cause will be taxed one-half to the intervenor and one-half to the plaintiffs-appellees.

COOPER, C.J., and FONES, BROCK and DROWOTA, JJ., concur.