PARKER AFFILIATED COMPANIES, INC. *vs.* DEPARTMENT
OF REVENUE.

Suffolk.  September 12, 1980. — January 8, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Taxation,* Income tax, Corporation.  *Constitutional Law,* Taxation.
*Statute,* Construction.

The amount of capital gains reported to the Federal government as a
    result of a corporation's sale of its interest in a subsidiary determined
    the net income taxable under G. L. c. 63, § 38 (*a*) (2), as appearing in
    St. 1966, c. 698, § 58, even though the definition of net income in
    c. 63, § 30 (5) (*b*), prohibited prior loss carry-over allowable under
    Federal tax law.  [260-264]
The requirement of G. L. c. 63, § 38 (*a*) (2), that the amount of a
    corporation's capital gains reported to the Federal government should
    determine the net income taxable under State law did not result in
    taxation of "fictional" income even though Federal law provided tax
    loss benefits not allowable under State law.  [264-265]
The prospective incorporation of Federal tax law in G. L. c. 63, § 30 (5),
    and § 38 (*a*) (2), as appearing in St. 1966, c. 698, §§ 46, 58, does not
    constitute impermissible delegation of legislative authority; nor can
    the general allusion to the Federal definitions of income in §§ 30 (5)
    and 38 (*a*) (2) be read to supersede the specific formulations and exclu-
    sions of those sections.  [265-267]

APPEAL from a decision of the Appellate Tax Board.

*S. Stephen Rosenfeld* for the taxpayer.

*Stephen S. Ostrach,* Assistant Attorney General (*Donald K.
Stern,* Assistant Attorney General, with him) for Depart-
ment of Revenue.

LIACOS, J.  Parker Affiliated Companies, Inc. (Parker),
appeals from the decision of the Appellate Tax Board
(board) rendered on October 19, 1979.  G. L. c. 58A, § 13.
The decision of the board upheld a Department of Revenue
(Department) assessment of an additional corporate excise
for the fiscal year ended January 31, 1973.

We summarize the pertinent facts as stipulated. Parker was the parent corporation of Parker Industries, Inc., owning eighty per cent of the outstanding shares of the subsidiary (Parker Industries). During the fiscal years ended January 31, 1970, 1971, 1972, and 1973, Parker filed consolidated Federal and State income tax returns, deducting the allowable share of operating losses as were sustained by its subsidiary. For losses aggregating $1,937,212 Parker took current Federal and State deductions amounting to $1,322,959. The difference not deducted amounted to $614,253. During the years 1970, 1971, and 1972, Parker adjusted the basis of its investment in Parker Industries to reflect the deducted losses.[1]

On March 30, 1972, Parker sold its entire interest in Parker Industries, realizing a long-term capital gain for Federal income tax purposes of $1,545,770. Parker reached this figure on its Federal return by adjusting its basis in Parker Industries. The adjustment was computed by entering on its Federal return the $614,253 carry-over loss, not allowable on earlier returns, and, following the formula of Treas. Reg. 26 C.F.R. 1.1502-32 (b) (2) (ii) (1980), adjusting its Federal basis downward by eighty per cent of the carry-over loss to reach a figure of $491,403.[2] In reporting its net taxable income on the Massachusetts corporate excise return, however, Parker did not similarly reduce its basis in Parker Industries. The result was that Parker calculated

---

[1] Treas. Reg. 1.1502-32(b) details the procedure to adjust the parent corporation's investment basis after the parent takes an "allocable part" of the subsidiary's earnings or losses. Parker appears to have reduced its basis by eighty per cent of the losses claimed and deducted. For example, Parker deducted current losses of $243,625 for the tax year ended January 31, 1970. But it made a downward adjustment to basis of $194,900 for that year. The pertinent portions of the regulation are reproduced at note 6, *infra*.

[2] Although the board used the figure $492,216, originally assessed by the department, both parties have made clear on appeal that the amount actually in question is $491,403. The difference of $813 is attributable to a deduction allowed on the Federal but not on the State excise return. We shall treat this latter figure as the correct figure in dispute.

Federal gain against a basis of $1,201,900, while it measured its State gain against a basis of $1,694,116.

After reviewing Parker's excise return for the tax year ended January 31, 1973, the Department issued, on December 12, 1973, a notice of intention to assess income in excess of that reported. The Department found an unreported difference in net income amounting to $491,403,[3] and assessed an increased excise of $42,084.47. This assessment was subsequently reduced to $23,024.26, reflecting a fifty per cent abatement in the assessment and interest.[4]

The sum at issue in this appeal is $491,403, by which Parker adjusted its Federal basis. Parker reasons that, because G. L. c. 63, § 30 (5) (*b*) (*ii*), forbids prior loss carryover,[5] there is no need to make the pro rata adjustment to basis required by the Federal law.[6] The board agreed with

---

[3] See note 2, *supra*.

[4] The abatement was required by G. L. c. 63, § 38 (*a*) (2), which controls the instant appeal. The statute is reproduced in relevant part at note 7, *infra*.

[5] General Laws c. 63, § 30 (5) (*a*) and (*b*) (*ii*), as amended through St. 1966, c. 698, § 46, provides:

"5. (*a*) 'Gross income', gross income as defined under the provisions of the Federal Internal Revenue Code, as amended and in effect for the taxable year, plus the interest from bonds, notes and evidences of indebtedness of any state, including this commonwealth; provided, however, that gross income of corporations taxable under section thirty-eight B shall, in addition to the foregoing, include a deduction for losses from the sale or exchange of capital assets sustained during the taxable year to the extent allowable by the Federal Internal Revenue Code.

"(*b*) 'Net income', gross income less the deductions, but not credits, allowable under the provisions of the Federal Internal Revenue Code, as amended and in effect for the taxable year. *Deductions with respect to the following items, however, shall not be allowed:* —

"(*i*) dividends received

"(*ii*) *losses sustained in other taxable years* . . ." (emphasis supplied).

The statute has been amended since the tax years here in issue. See St. 1973, c. 752, § 1.

[6] Treasury Regulation § 1.1502-32 provides, in part:

"§ 1.1502-32. Investment adjustment.

"(*a*) *In general.* As of the end of each consolidated return year, each member owning stock in a subsidiary shall adjust the basis of such stock in the manner prescribed in this section. . . . In the case of a disposition (as

the Department that the amount of capital gains reported to the Federal government determined the net income taxable under G. L. c. 63, § 38 (a) (2), as in effect on January 31, 1973.[7] We affirm the Board's decision on the basis of the statutory language then in effect.

defined in § 1.1502-19(b)) of stock of a subsidiary before the end of the taxable year, the adjustment with respect to such stock shall be made as of the date of disposition. The amount of such adjustment shall be the difference between the positive adjustment described in paragraph (b) (1) or (c) (1) of this section, whichever is applicable and the negative adjustment described in paragraph (b) (2) or (c) (2) of this section, whichever is applicable. Such difference is referred to in this section as the 'net positive adjustment' or the 'net negative adjustment,' as the case may be.

"........

"(b) (2) *Negative adjustment.* The negative adjustment with respect to a share of stock which is not limited and preferred as to dividends shall be the sum of —

"(i) An allocable part of the deficit in earnings and profits of the subsidiary for the taxable year (determined under § 1.1502-33);

"(ii) An allocable part of any net operating loss or net capital loss incurred by the subsidiary in a prior separate return year, *and* of any portion of a consolidated net operating loss or consolidated net capital loss incurred by the group in a prior consolidated return year which is attributable to such subsidiary under § 1.1502-79 (a) (3) or (b) (2), and which is carried over *and absorbed in the taxable year*; . . ." (emphasis supplied). Treas. Reg. 26 C.F.R. § 1.1502-32 (1980).

[7] General Laws c. 63, § 38 (a) (2), as in effect for the taxable year ending January 31, 1973:

"§ 38. "The commissioner shall determine the part of the net income of a domestic business corporation or of a foreign corporation derived from business carried on within the commonwealth as follows:

"(a) Net income as defined in section thirty of this chapter adjusted as follows shall constitute taxable net income:

"(1) Dividends included therein shall be deducted, and

"(2) Long-term capital gains realized and long-term capital losses sustained from the sale or exchange of capital assets, as defined under the provisions of the Federal Internal Revenue Code, as amended and in effect for the taxable year, if such assets consist of intangible property, to the extent includible in taxable net income reported to the federal government, shall be included therein at one half of the amount so reported to the federal government; provided, however, that such gains realized and losses sustained from the sale or exchange of such property effected under the provisions of the Federal Internal Revenue Code, as amended and in effect for taxable years ended on or before December thirty-first, nineteen hundred and sixty-two, shall not be included in any part therein."

General Laws c. 63, § 38 (a) (2), was amended in 1974 in ways not material to this appeal. St. 1974, c. 722, § 2.

Parker urges a flexible construction of G. L. c. 63, § 38 (*a*) (2), to conform with the "practical reality" of its situation. It suggests that we review the meaning of "gain" in light of several earlier decisions of this court. Parker also implies that a literal rather than a liberal reading of the statute raises serious constitutional problems under art. 44 of the Amendments to the Massachusetts Constitution and as an improper delegation of legislative taxing authority. The Department counters that a corporate excise is outside the limitations placed on income taxation by art . 44.[8] It argues that Parker is actually seeking a deduction and must therefore point to a specific statutory grant of that deduction. Moreover, the Department warns that administrative chaos would ensue upon departure from the present scheme of incorporating Federal tax law. We do not address the last two contentions because we accept the Department's reasoning that the plain meaning of the relevant statutes requires affirmation of the board's decision.

I. *Statutory Construction of G. L. c. 63, §§ 30 and 38 (a)* *(2), During the Applicable Period.*

The means by which Massachusetts taxed the gain from Parker's sale was spelled out in G. L. c. 63, § 38 (*a*) (2), as appearing in St. 1966, c. 698, § 58.[9] Section 38 starts with net income as defined in G. L. c. 63, § 30 (5) (*b*), enacted contemporaneously, St. 1966, c. 698, § 46,[10] and incorporates Federal definitions of gross and net income. The net income factor in the § 38 formula was thus "gross income less the deductions . . . allowable under provisions of the

---

[8] Article 44 of the Amendments to the Massachusetts Constitution provides, in part:

"Full power and authority are hereby given and granted to the general court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property. . . . This article shall not be construed to limit the power of the general court to impose and levy reasonable duties and excises."

[9] See text at note 7, *supra.*

[10] See text at note 5, *supra.*

Federal Internal Revenue Code, as amended and in effect for the taxable year." G. L. c. 63, § 30 (5) (b). The net income figure so derived was then adjusted under § 38 (a) (2), to include one-half of the amount of long-term capital gains realized "as defined under the provisions of the Federal Internal Revenue Code . . . for the taxable year, . . . to the extent includible in taxable net income reported to the federal government." General Laws c. 63, § 38 (a) (2), as in use then.[11]

The consistent inclusion of a Federal tax benchmark has not restrained a Legislature from carving out peculiar variations to further the State's tax policies. See *Central Me. Power Co.* v. *Public Utils. Comm'n*, 382 A.2d 302, 320 (Me. 1978); *First Fed. Sav. & Loan Ass'n* v. *Connelly*, 142 Conn. 483, 493 (1955). See generally 42 A.L.R.2d 797, § 2. Section 30 (5) (b) (ii), in effect during the taxable year at issue, forbade deductions from corporate net income based on "losses sustained in other taxable years." The plain meaning of this provision is to bar State use of the loss carry-over to which Parker had recourse on its Federal return. See *Commissioner of Corps. & Taxation* v. *Chilton Club*, 318 Mass. 285, 288 (1945) (statutory language is principal source of insight into legislative purpose); cf. Dane, Taxation of Corporations and Banks — 1966 Legislation, 52 Mass. L.Q. 41, 52-55 (1967). The ban on prior year loss carry-over

---

[11] From its legislative inception in 1919, § 30 has consistently reflected incorporation of Federal tax law. See St. 1919, c. 355, § 3 ("net income" as defined in Federal Revenue Act of 1918); St. 1922, c. 302 (adding reference to Federal Revenue Act of 1921); St. 1925, c. 265, § 1 (specific year of Federal act replaced by phrase "for the applicable period"); St. 1925, c. 343, § 1A; St. 1930, c. 220, § 3; St. 1933, c. 327, § 3 ("applicable period" remained through successive modifications of section not affecting Federal incorporation). Section 38's incorporation of Federal figures, however, was more recent. Compare St. 1920, c. 415, § 2 (listing classes of income allocable to Commonwealth under § 38 without mention of Federal law), with St. 1966, c. 698, § 58 (incorporating reference to Internal Revenue Code into definition of gains and losses for allocation of State taxable net income). See also *Dow Chem. Co.* v. *Commissioner of Revenue*, 378 Mass. 254, 264-265 (1979); *B.W. Co.* v. *State Tax Comm'n*, 370 Mass. 18, 22-23 (1976).

evinces a deliberate legislative choice to differentiate State from Federal practice in this area. Had the Legislature intended otherwise in 1966, it had ample subsequent opportunity to alter the law.[12] Instead, the Legislature took action to crystallize the divergence, delimiting specific instances when such carry-overs are permissible. St. 1973, c. 752, § 1.[13]

Parker contends that § 38 read narrowly conflicts with the specific ban on carry-over loss in § 30 because the § 30 exclusion vitiates the advantages of the Federal scheme: viz., carry-over of past losses with pro rata adjustment to basis. Although Parker urges that we interject the entire Federal symbiosis into the derivation of "gains" for purposes of § 38, we see no disharmony on the face of the two provisions. See *County Comm'rs of Middlesex County* v. *Superior Court,* 371 Mass. 456, 460 (1976) (statutes which do not necessarily conflict should be construed to have consistent directives so that both may be given effect); *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513-514 (1975) (two or more statutes relating to same subject matter should be construed together so as to achieve a harmonious whole).

Examining the language of c. 63, § 38 (*a*) (2), as it had effect during the tax years in question, we discern an intent to use the Federal figure for gains or losses as the starting point for a net income formula unique to Massachusetts. This formula cut in half the capital gains or loss figure reported to the Federal government. Without looking behind the gains figure reported to the Federal government, the Department simply plugged in half that amount in accordance with the statutory terms. Thus, in Parker's case, only half the gains reported were includible in the State calcula-

---

[12] General Laws c. 63, § 30 (5) (*a*), was amended by St. 1967, c. 755, § 3, but the treatment of prior losses remained intact.

[13] Statute 1973, c. 752, § 1, carved out an exception to carry-over losses, allowing their use for the first five consecutive taxable years of a corporation. The fifty per cent ownership rule, as well as the five-year eligibility period, would have precluded its applicability to this case.

tion. The determination to forbid the Federal treatment of loss is clearly within the taxing power and prerogative of the Legislature. See *Brown-Forman Co.* v. *Kentucky*, 217 U.S. 563, 567 (1910) (power to tax is fundamental; State power subject only to restrictions of due process and equal protection); *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372 Mass. 478, 490-491 (1977), aff'd, 437 U.S. 255 (1978) (legislative classification for tax purposes given wide respect).[14]

For purposes of the Massachusetts formulation then in effect, only the capital gains figure reported had import; the method of deriving that figure did not, because the State policy was to use the literal Federal gains figure as a base for its own calculations. See *B.W. Co.* v. *State Tax Comm'n*, 370 Mass. 18 (1976) (gain which was not literally part of gross income as defined in Federal law could not be part of State gross income). In other jurisdictions without a saving clause such as that described in *Denniston* v. *Department of Revenue*, 287 Or. 719 (1979), the results match our conclusion. See, e.g., *Champion Int'l Corp.* v. *Bureau of Revenue*, 88 N.M. 411, 416 (1975) (taxpayer electing to report cut timber as Federal capital gains bound by that figure on State return, even though he had not yet realized gain); *Production Credit Ass'n* v. *Department of Treasury*, 404 Mich. 301, 303 (1978) (incorporation of Federal yardstick requires that income subject to State tax be same as Federal taxable income); *Commonwealth* v. *Warner Bros. Theatres, Inc.*, 345 Pa. 270, 272 (1942) (State does not examine how Federal authorities fixed net income figure but simply uses that figure as an unvarying base for State taxation). The board correctly interpreted the statutory lan-

---

[14]Parker urges this court to follow the Oregon court which, in *Denniston* v. *Department of Revenue*, 287 Or. 719, 733-734 (1979), resolved discrepancies between State and Federal tax law in the taxpayer's favor. Although the *Denniston* opinion addressed the question of the hardship which may result from the interplay of Federal and State tax laws, we think the facts of *Denniston* and, more particularly the pertinent statutes, are sufficiently different from those at bar to produce a contrary result.

guage that added capital gain to State net income "to the extent includible in taxable net income *reported* to the federal government" (emphasis supplied). G. L. c. 63, § 38 (*a*) (2).

II. *Constitutional Considerations.*

Parker appears to argue that under the Board's interpretation of State tax law, the gain involved is "fictional" because no corresponding tax loss benefit was provided to it, in contrast to the provisions of Federal law. In this context it also invokes art. 44 as prohibiting a tax on "fictional" income or gain. See *Brown* v. *Commissioner of Corps. & Taxation,* 242 Mass. 242 (1922).

a. *Was There a Taxable Gain?*

In advocating a flexible statutory construction, Parker suggests that the $491,403, which represents its downward adjustment of basis for Federal tax purposes, cannot be considered "gain" for purposes of measuring taxable Massachusetts net income under G. L. c. 63, § 38 (*a*) (2). To buttress its theory that the additional assessment taxes capital rather than profit, Parker expounds a judicial definition of gain which it claims § 38 (*a*) (2) embraces. We have no quarrel with the definition Parker proffers, that gain means an actual increase in wealth and not a mere paper profit, *Bryant* v. *Commissioner of Corps. & Taxation,* 291 Mass. 498, 501 (19T5); but we do not view the decision of the board as inconsistent with that definition. With the application of the criteria Parker advances, the difference between Parker's sale price and its capital investment represents a real dollar gain for Parker.[15] *First Nat'l Bank* v. *Commissioner of Corps. & Taxation,* 274 Mass. 583, 586 (1931) (ordinary method of measuring gain is difference between sale price and cost of investment). From the figures presented, there appears no doubt that Parker did recoup its capital investment upon selling Parker Industries. See *Barnes* v. *United*

---

[15] If we ignore any of the tax allowances for loss, the simple figures show that Parker invested $1,504,000 in Parker Industries, then sold it for $2,747,670, with a resultant dollar gain of $1,243,670.

*States,* 253 F. Supp. 116, 118 (S.D. Ill. 1966) (recoupment of cost must precede any need to report a gain). Nor do the instant facts make out an impermissible tax on the augmented value of intangible property still in the taxpayer's possession, as in *Commissioner of Corps. & Taxation* v. *Fopiano,* 324 Mass. 304, 308 (1949).

How the State or Federal authorities choose to tax Parker's gain does not alter its basic nature. The $491,403 which Parker defends is merely an intermediate figure in the ultimate Federal calculation of gain. It plays no part in the Massachusetts formula. Our holding that the Department's assessment reached Parker's income and not its capital forecloses Parker's first constitutional challenge under art. 44 of the Amendments to the Massachusetts Constitution.[16]

b. *The Delegation Question.*

Parker also challenges the Board's apparent reliance on the fact that the Legislature knew of the provisions of Treas. Reg. § 1.1502-32(b) (2) (ii) when it enacted §§ 30 (5) (*b*) (*ii*) and 38 (*a*) (2) in 1966. Parker argues persuasively that the regulation was not in effect when these statutes were enacted. Parker argues that an interpretation of the statutes which would give effect to subsequent Federal regulatory enactments would be to attribute to the Legislature an improper intent to delegate legislative power in violation of the Massachusetts Constitution, Part II, c. 1, § 1, art. 4. We believe that the knowledge presumed does not go to specific future regulations but to the general premise which underlies the incorporation by reference of a portion of Federal tax law: that the Federal definitions may vary from

---

[16]We note at this juncture that the distinction which the Department raises between an income tax and a corporate excise does not obviate the constitutional question if the excise is unreasonable. Art. 44 of the Amendments (excises must be "reasonable"). P. Nichols, Taxation in Massachusetts 122 (3d ed. 1938) (excise need not be proportional but must be reasonable). To the extent that Parker asserts that the excise is unreasonable because it is not levied against a measurable gain, our discussion in the body of the opinion negates this claim.

one taxable year to the next. See our discussion, *supra,* of the incorporation of Federal definitions of gross and net income for the "applicable period." See also *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n,* 372 Mass. 478, 491 (1977) (action of Federal authorities "may influence the amount of the [State] tax payable").

Even if the board erroneously deduced legislative prescience of Federal law, the prospective incorporation of Federal tax law does not constitute impermissible delegation of legislative authority. In *First Fed. Sav., supra* at 491, this court stated with clarity the distinction which adheres to federalizing our tax law: "[Federal] action may influence the amount of the tax payable, but the taxing power has not been delegated to [the Federal government]." Cases cited by Parker fail to persuade us that there has been an impermissible delegation. We note moreover that the overwhelming body of decisional law on this question negates Parker's nondelegation thesis. See *City Nat'l Bank* v. *State Tax Comm'n,* 251 Iowa 603, 616 (1960) (though State Constitution forbids reference to other law to determine tax, no violation for Legislature to define State net income as adjusted gross income reported on Federal tax return); *Anderson* v. *Tiemann,* 182 Neb. 393, 398 (1967) (upholding State laws incorporating future United States income tax law); *First Fed. Sav. & Loan Ass'n* v. *Connelly,* 142 Conn. 483, 490 (1955) (corporate income tax statute may use Federal definition of gross income with certain exceptions); accord, *Kellems* v. *Brown,* 163 Conn. 478, 502-503 (1972); *Thorpe* v. *Mahin,* 43 Ill. 2d 36, 49 (1969); *Katzenberg* v. *Comptroller of the Treasury,* 263 Md. 189, 204 (1971).

The case of *Wallace* v. *Commissioner of Taxation,* 289 Minn. 220 (1971), which Parker advances, supports the Department's premise that if the Legislature had wished to achieve the total incorporation Parker advocates, it knew exactly how to go about it. In *Wallace,* as in the case at bar, the court reconciled a general provision incorporating Federal tax law with a specific State enactment which negated a Federal exclusion. The same phenomenon has

occurred in Parker's case: the general allusion to the Federal definitions of income in §§ 30 (5) and 38 (*a*) (2) cannot be read to supersede the specific formulations and exclusions of those sections. Specific statutory provisions preempt general ones. *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 118 (1973). *Clancy* v. *Wallace*, 288 Mass. 557, 564 (1934).

The decision of the Appellate Tax Board is affirmed.

*So ordered.*