**Katherine E. McFADDIN, Executrix of the Estate of James E. McFaddin Deceased, Plaintiff-Appellee,**

**v.**

**Donald W. JACKSON, Commissioner of Revenue, State of Tennessee, Defendant-Appellant.**

Supreme Court of Tennessee, at Knoxville.

July 27, 1987.

Rehearing Denied Oct. 12, 1987.

Gorman Waddell, William S. Lewis, Moore, Stout, Waddell & Ledford, Kingsport, for plaintiff-appellee.

W.J. Michael Cody, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., H. Rowan Leathers, III, Asst. Atty. Gen., Nashville, for defendant-appellant.

## OPINION

FONES, Justice.

This case involves the applicability of the Tennessee Inheritance Tax to decedent's

account balances in profit sharing and pension plans under § 401(a) Internal Revenue Code and individual retirement plans under § 408(a) Internal Revenue Code, totalling $572,348. The Tennessee statute provided, in effect, that such account balances were taxable if subject to federal estate tax, but exempt if excluded from federal estate tax. In 1978, at the time the Tennessee statute was enacted, the survivorship interests involved here were not subject to the federal estate tax, but in 1982 Congress subjected any excess over $100,000 of such interests to the federal estate tax, for decedents dying after 31 December 1982. Decedent died 10 June 1983. The first issue is whether the Tennessee Legislature intended the Tennessee tax to be in accord with the provisions of the Internal Revenue Code as it existed in 1978 or as amended in 1982 and effective on the date of decedent's death. We hold that the 1978 Tennessee Act incorporated future amendments of the adopted section of the Internal Revenue Code. That holding invokes a second issue, to-wit: whether the incorporation of future amendments of § 2039 IRC by Congress into the law, is an unconstitutional delegation of the legislature's taxing power. We hold that the Act so interpreted is not an unconstitutional delegation.

The trial court held that the Tennessee Legislature did not intend to incorporate any future amendments of the Internal Revenue Code into the 1978 Act. In the alternative, it held that if the act applied to future amendments, it would be unconstitutional as an invalid delegation of the taxing power.

The facts were stipulated and those facts relevant to the decision are quoted from the stipulation as follows:

(1) P'aintiff is the surviving spouse of James G. McFaddin, who died June 10, 1983. Plaintiff qualified and was appointed Executrix of the Estate of James G. McFaddin, by order of the Probate Court of Sullivan County, Tennessee.

(2) At the date of Decedent's death, his account balances under a profit sharing plan qualified under IRC Section 401(a), a money purchase pension plan qualified under IRC Section 401(a), and two individual retirement accounts qualified under IRC Section 408(a) were as follows:

(a) Account balance of Decedent under qualified profit sharing plan of Decedent's employer, Bristol Orthopedic Associates, P.C.—all contributions made by employer.—$319,113.97.

(b) Account balance of Decedent under qualified money-purchase plan of Decedent's employer, Bristol Orthopedic Associates, P.C.—all contributions made by employer.—$216,403.80.

(c) Dominion National Bank IRA Account No. 0191100005 (roll-over contribution from terminated HR–10 plan). All contributions made by employer. $34,-565.55.

(d) Dominion National Bank IRA Account No. 05801003–30. All contributions were tax deductible.—$2,265.33.

The total amount in the four accounts at the date of Decedent's death was $572,348.65.

(3) The four account balances were payable to Katherine E. McFaddin as surviving spouse of James G. McFaddin pursuant to the plans establishing the accounts. All four account balances will be paid over a period of time in monthly installments extending at least 36 months after the date of Decedent's death.

Plaintiff itemized the four account balances on the inheritance tax return, but did not treat them as part of the taxable estate of decedent. The Commissioner included the four account balances in excess of $100,000 in the taxable estate in accord with federal estate tax treatment since the effective date of the 1983 amendment, resulting in a deficiency of $18,428 plus $4,361 interest, which plaintiff paid under protest and brought this suit to recover.

The subdivision of the inheritance tax law dealing with the taxation of annuities and employee pension profit sharing and stock bonus plans, that have survivorship benefits, was first enacted as Public Acts 1973, chapter 362, and codified as T.C.A.

§ 30–1602(i). The 1973 Act tracked, in almost identical language, § 2039 of the Internal Revenue Code, 26 U.S.C. § 2039, subjecting such interests to substantially the same tax treatment as Congress had imposed. In 1977 the Legislature amended T.C.A. § 30–1602(i) by adding as subsection (3) a provision exempting from the Tennessee inheritance tax all sums received by any beneficiary from an annuity under the Retired Serviceman's Family Protection Plan or Survivor Benefit Plan pursuant to chapter 73 of Title 10 of U.S.C. whether the proceeds thereof were attributable to employer contribution, employee contribution or otherwise. *See* chapter 388, Public Acts 1977.

In 1978 the Tennessee Legislature made a number of amendments to the Tennessee Inheritance Tax law, in enacting Public Acts of 1978, chapter 731. Section 3 of that Act deleted subsection (i) of T.C.A. § 30–1602 in its entirety and substituted therefor the following:

> (i) There shall be included for taxation under this chapter the value of any annuity or other payment taxable for federal estate tax purpose under section 2039(a) and (b) of the Internal Revenue Code, and there shall be exempted from taxation under this chapter the value of any annuity or other payment excluded from federal estate tax under section 2039(c) and (e) of the Internal Revenue Code. In addition, there shall be exempt from taxation under this chapter the proceeds of an annuity or other payment whether attributable to employee or employer contribution or otherwise receivable by any beneficiary under chapter 73 of title 10 of the United States Code.

It is undisputed that from the date of passage of chapter 731, Acts of 1978, until Congress enacted Public Law 97–248 in 1982, to apply to decedents dying after 31 December 1982, the interests of the McFaddin estate involved here would not have been taxable under § 2039 IRC. Public Law 97–248 enacted in 1982, however,

amended § 2039 by limiting the exemption of such interests to $100,000 and subjecting the excess to taxation. Thus, if chapter 731, applied § 2039 IRC as it existed at the time the 1978 Tennessee Act became effective, the taxpayer owes no Tennessee inheritance tax. On the other hand, as the commissioner contends, if chapter 731 incorporated future amendments by Congress to § 2039 IRC, the McFaddin estate owes the tax assessed by the commissioner to the extent that the account balances exceeded $100,000.

Both parties to this litigation rely on § 22 of chapter 731, Acts of 1978, to support their respective contentions as to the legislative intent on the issue of whether 26 U.S.C. § 2039 is to be applied as it read on the effective date of chapter 731, or as thereafter amended prior to the date of McFaddin's death, 10 June 1983. Section 22 provided as follows:

> All references in this act to the laws of the United States shall mean the provisions of the Internal Revenue Code of 1954, as amended,[1] or other provisions of the United States Code, as the same may be or become effective.

Taxpayer says the language, "as the same may be or become effective" means that the Tennessee Legislature intended to make it clear that if any existing portions of the Internal Revenue Code had effective dates subsequent to 13 March 1978, those portions would also be incorporated. That argument is seriously flawed by the fact that if § 2039 IRC as it read on 13 March 1978 had future effective dates for some portions, it would be unnecessary and redundant for the Tennessee Legislature to refer to that circumstance as such future effective dates would be as much a part of the statute adopted as any feature thereof. That result is accentuated by a portion of the principle we adopted in *Roddy Manufacturing Co. v. Olsen*, 661 S.W.2d 868 (Tenn.1983) wherein we said that the effect of adopting another statute

---

1. Taxpayer observes, and we agree, that the "Internal Revenue Code of 1954, as amended," is the correct designation of the federal tax code as it existed when the 1978 Tennessee Act was adopted, because of many prior amendments. Therefore, "as amended" has no significance on the merits of the issue under consideration.

is that the statute adopted has been incorporated bodily into the adopting statute.

Taxpayer also argues that if the legislature had intended to incorporate future amendments of the Internal Revenue Code, the Tennessee Legislature would have said, in § 22, that all references to the laws of the United States shall mean the "Internal Revenue Code of 1954, as amended, as the same may be amended from time to time."

It is hazardous to postulate what language the legislature would use if it intended to express any given objective. In 1983, the Tennessee Legislature enacted substantial amendments to the Tennessee Inheritance Tax Law, including an amendment to the annuity subdivision, then T.C.A. § 30–1602(i), now T.C.A. § 67–8–304(9). Section 15 of that act, Public Acts 1983, chapter 73, reads as follows:

All references to the Internal Revenue Code in chapter 16 and 17 of title 30 and chapter 25 of title 67 of the Tennessee Code Annotated shall mean title 26 of the United States Code *as effective on the date of enactment of this act.* [Emphasis supplied.]

We believe that the legislature has told us in section 15 of the 1983 act what language it would use to limit the adoption of another statute to the provisions thereof on the date of adoption. We are of the opinion that if the 1978 legislature had intended to adopt the Internal Revenue Code of 1954, as amended, as it existed on 13 March 1978, it would have used the identical language it used in 1983, to-wit: "as effective on the date of enactment of this act."

■ Taxpayer also relies on *Roddy Manufacturing Co. v. Olsen, supra.* In that case this Court adopted the rule of statutory construction that, in the absence of an express i tent to include future amendments, the adoption of a statute by specific reference has the effect of incorporating the provisions of the adopted statute, as it existed, at the time of adoption and therefore does not include subsequent amendments. If the legislature had omitted § 22 from chapter 731, Public Acts 1978, *Roddy* would dictate that section 2039 be construed in th's litigation as it read on 13

March 1978. But, we interpret "may be or become effective" as an express intent to include future amendments into the body of the adopting statute.

■ Taxpayer contends that if § 22, chapter 731 is construed to include future amendments to 26 U.S.C. 2039, the Act violates Article II, sections 2 and 3, Tennessee Constitution by delegating to Congress the Tennessee Legislature's power to tax.

The commissioner does not and could not dispute the proposition that the Tennessee Constitution vests the power to levy and collect taxes in the legislature and that the legislature cannot delegate that power. Thus, the issue is simply whether the Tennessee Legislature has delegated the power to tax annuities to the Congress of the United States. All of the cases agree that a state legislature does not invalidly delegate its legislative authority by adopting a federal law as it exists at the time of adoption. The division involves only the propriety of incorporating future amendments.

The incorporation of § 2039 IRC into T.C.A. § 30–1602(i) affects the extent to which annuities, pension and profit sharing plans, etc., are included in the gross estates of decedents and the extent to which the values of those interests may be exempt. The Tennessee Legislature has fixed the inheritance tax rates and they are not subject, presently or in the future, to the action of Congress. The effect of the 1978 Act was simply to adopt the same base for taxing annuities as the federal government then used or might thereafter adopt.

There is respectable authority on both sides of this issue. Taxpayer relies upon *State v. Williams*, 119 Ariz. 595, 582 P.2d 251 (1978), *Cheney v. St. Louis Southwestern Railway Co.*, 239 Ark. 870, 394 S.W.2d 731 (1965), and *Dawson v. Hamilton*, 314 S.W.2d 532 (Ky.App.1958), as supporting its contention that inclusion of future amendments was an unconstitutional delegation of taxing power. The facts in the instant case are distinguishable from the facts in each of the cited cases. However we concede that it is likely that Arizona,

Arkansas and Kentucky would hold that an unconstitutional delegation of their respective legislature's taxing power had taken place under facts identical to the instant case.

The Tennessee cases involving alleged unconstitutional delegation of legislative power have involved acts that expressly required a favorable popular vote to become operative.

If the question of whether a law becomes effective is determined by the popular vote of those who will be subject to the law, our cases have held that there has been an unconstitutional delegation of legislative authority. *See Gibson County Special School Dist. v. Palmer*, 691 S.W.2d 544 (Tenn.1985); *Lobelville Special School District v. McCanless*, 214 Tenn. 460, 381 S.W.2d 273 (1964); *Halmontaller v. City of Nashville*, 206 Tenn. 64, 332 S.W.2d 163 (1960); *Buena Vista Special School Dist. v. Board of Election Com'rs of Carroll County*, 173 Tenn. 198, 116 S.W.2d 1008 (1938); *Arthur v. State*, 148 Tenn. 434, 256 S.W. 437 (1923); and *Wright v. Cunningham*, 115 Tenn. 445, 91 S.W. 293 (1905).

The consistent rationale followed in each of the cases was established in *Wright* and is as follows:

> On these grounds we are of the opinion that, under our constitution, no legislative act can be so framed as that it must derive its efficacy from a popular vote. To be valid it must leave the hands of the legislature complete; not in the sense that it may go into effect at once, it is true, but it must at birth bear the impress of sovereignty, and speak the sovereign will. If it contains within itself a condition or a contingency suspending to some future time, or to the happening of some future event, its obligatory force as a rule of action or conduct of the people for whom it was intended, that contingency or that event must be one selected by the sovereign power itself as one, the happening of which shall render it immediately expedient that the suspension of the power inherent in the act shall cease, and that it shall at once become operative

> as a rule of conduct for the government of the people.

*Id.* at 468–69, 91 S.W. 293.

In Chapter 731 our legislature selected the future event that may affect the tax base of annuities, to-wit: the possibility that Congress would amend section 2039 IRC. In our opinion that contingency does not render the act unconstitutional. What the Tennessee Legislature has done complies with the mandates of *Wright*, that the happening of some future event be one selected by the sovereign power and that upon its happening it becomes immediately operative. We think it is also significant that the legislature retains the power to withdraw its approval of any future amendment the Congress might make. As noted herein, our legislature decided in 1983 that it would no longer permit the incorporation into Tennessee law of future congressional amendments to § 2039 IRC. This may have resulted from the fact that Congress has amended the section in each of the years from 1978 through and including 1983.

This rationale is consistent with the reasoning in cases in other jurisdictions holding that prospective incorporation of federal tax law is not an unconstitutional delegation. In *Parker Affiliated Companies v. Department of Revenue*, 382 Mass. 256, 415 N.E.2d 825 (1981) the issue was the liability of the Parker Companies for additional corporate excise taxes assessed by the Massachusetts Department of Revenue. Gross income and net income for corporate excise tax purposes was "as defined under provisions of the Federal Internal Revenue Code, as amended, and in effect for the taxable year." In response to the Parker Companies claim that the Massachusetts Department of Revenue was invoking a federal treasury regulation not in effect when the Massachusetts Legislature enacted the corporate excise tax, resulting in an alleged unconstitutional delegation of that bodies' taxing power to the federal government, the Supreme Judicial Court of Massachusetts said:

> Even if the board erroneously deduced legislative prescience of Federal law, the

prospective incorporation of Federal tax law does not constitute impermissible delegation of legislative authority. In *First Fed. Sav., supra* at 491, 363 N.E.2d 474, this court stated with clarity the distinction which adheres to federalizing our tax law: "[Federal] action may influence the amount of the tax payable, but the taxing power has not been delegated to [the Federal government]." Cases cited by Parker fail to persuade us that there has been an impermissible delegation. We note moreover that the overwhelming body of decisional law on this question negates Parker's non-delegation thesis. See *City Nat'l Bank v. State Tax Comm'n*, 251 Iowa 603, 616, 102 N.W.2d 381 (1960) (though State Constitution forbids reference to other law to determine tax, no violation for Legislature to define State net income as adjusted gross income reported on Federal tax return); *Anderson v. Tiemann*, 182 Neb. 393, 398, 155 N.W.2d 322 (1967) (upholding State laws incorporating future United States income tax law); *First Fed. Sav. & Loan Ass'n v. Connelly*, 142 Conn. 483, 490, 115 A.2d 455 (1955) (corporate income tax statute may use Federal definition of gross income with certain exceptions); accord, *Kellems v. Brown*, 163 Conn. 478, 502–503, 313 A.2d 53 (1972); *Thorpe v. Mahin*, 43 Ill.2d 36, 49, 250 N.E.2d 633 (1969); *Katzenberg v. Comptroller of the Treasury*, 263 Md. 189, 204, 282 A.2d 465 (1971).

*Id.* at 831.

In *First Federal Savings & Loan Assn. v. Connelly, supra*, the taxpayer attacked the constitutionality of the corporate business tax law on the ground that it was an unlawful delegation of legislative power to the federal government. The Connecticut statute adopted the definition of gross income "as defined in the federal corporation net income tax law in force on the last day of the income year" and deductions from gross income was to be according to the federal law at the end of the income year, with certain exceptions. Obviously the Connecticut statute embraced whatever changes in the definitions of gross income and deductions therefrom that Congress adopted from year to year. The Connecticut court of last resort responded to taxpayers' claim of unconstitutional delegation of the taxing power as follows:

This is not a delegation of legislative power but an incorporation by reference of the federal law into the state law. State law lays a tax on the franchise or privilege of a corporation to do business in this state (citations omitted). The state legislature and not the Congress has selected net earnings as the base for determining the amount of this tax and has fixed the rate to be paid on that tax base. As a matter of convenience to the taxpayer and economy to the state, the legislature has adopted some of the standards employed in the federal corporation net income tax law.

*Id.* 115 A.2d at 459–60.

In *Alaska Steamship Co. v. Mullaney*, 180 F.2d 805 (9th Cir.1950), the legislature of the Alaskan Territory enacted an income tax, the general scheme of which was to incorporate by reference the Internal Revenue Code of the United States, "as now in effect or hereafter amended" and to impose a tax at the rate of ten percent of the income tax due the United States by Alaskan taxpayers. The adoption of future amendments by Congress was attacked on the grounds of unconstitutional delegation. The United States Court of Appeals, Ninth Circuit responded to that contention as follows:

We think it is far from clear that any invalid delegation is attempted. There are of course many cases which have held attempts by a legislative body to incorporate provisions into its enactments by reference to future acts or amendments by other legislatures, to be invalid. But where it can be said that the attempt to make the local law conform to future changes elsewhere is not a mere labor-saving device for the legislators, but is undertaken in order to attain a uniformity which is in itself an important object of the proposed legislative scheme, there are a number of precedents for an approval of this sort of thing....

....

The effort of the Alaska legislature to make its territorial income tax machinery conform to the federal act, and to preserve and continue such conformity, makes sense. It makes for convenience to the taxpayer and for simplicity of administration. Cf. *Underwood Typewriter Co. v. Chamberlin*, 94 Conn. 47, 65, 108 A. 154, 160. A similar coordination has been recommended by students of income tax problems for adoption by the states generally. Since the attainment of this uniformity was itself a major objective of the Alaska legislature, in enacting that the local law must conform, the Alaska legislature, which alone could make this decision, was itself acting, and was not abdicating its functions, nor, in our opinion, making an invalid delegation to Congress.

*Id.* at 816–17.

After Alaska became a state, its Supreme Court in *Hickel v. Stevenson*, 416 P.2d 236 (1966) implicitly approved the constitutionality of the Alaska income tax act that was under consideration in *Mullaney.*

In 1966 Nebraska adopted a constitutional amendment that provided as follows:

When an income tax is adopted by the Legislature, the Legislature may adopt an income tax law based upon the laws of the United States.

In 1967 the Nebraska legislature passed an income tax law that adopted provisions of the federal income tax law, "as the same may be or become effective, at any time or from time to time, for the taxable year." In *Anderson v. Tiemann*, 182 Neb. 393, 155 N.W.2d 322 (1967), taxpayers attacked the constitutionality of the 1967 income tax law on the ground that the constitutional amendment did not authorize the adoption of future actions of Congress changing the federal income tax law. The Supreme Court of Nebraska noted that the constitutional amendment did not expressly authorize future changes nor did it restrict the legislature to present laws only. Thus, the issue before the court was the same as the issue in the instant case. The Supreme Court of Nebraska found no improper delegation of legislative power, based upon the following rationale:

The constitutional amendment with which we are dealing does not require, but only authorizes, the Legislature to base a state income tax upon the laws of the United States. In connection with a state income tax law, we think it permits the Legislature to use all, part, or none of the laws of the United States as it may determine from time to time appropriate insofar as it may be lawful and practicable to do so. It does not preclude the Nebraska Legislature from repealing its own present enactment or adopting a completely different method of imposition of its income tax, and the Legislature retains the complete legislative power to make all such decisions. The adoption of a state income tax based upon present and future federal income tax laws does not constitute a waiver of the sovereignty of the state, nor an abdication of its functions, nor constitute a violation of the requirements of a representative form of government.

*Id.* at 327.

We find no unconstitutional delegation of the Tennessee Legislature's taxing power under the facts of this case.

The judgment of the trial court is reversed and the taxpayer's suit is dismissed. Costs are adjudged against the Estate of McFaddin.

HARBISON, C.J., and BROCK, COOPER and DROWOTA, JJ., concur.

OPINION ON PETITION TO REHEAR

FONES, Justice.

Plaintiff–Appellee, Katherine E. McFaddin, has filed a petition to rehear which has been considered by the Court and found to be without merit.

The petition is denied. Costs are adjudged against plaintiff.

HARBISON, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.