The FIRST UTILITY DISTRICT OF CARTER COUNTY, Tennessee, Plaintiff–Appellant,

v.

Truman CLARK, County Executive of Carter County, Tennessee, Defendant–Appellee.

Supreme Court of Tennessee, at Knoxville.

May 26, 1992.

**284**

Cecil D. Branstetter, Carrol D. Kilgore, Nashville, for plaintiff-appellant.

George F. Dugger, Jr., County Atty., Elizabethton, Charles W. Burson, Atty. Gen. & Reporter, Byron M. Jones, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

ANDERSON, Justice.

In this declaratory judgment action, we are required to determine whether the 1990 amendment[1] to the 1937 Utility District Act is unconstitutional. The amendment allows the legislative body of Carter County to change the manner of filling vacancies on the utility district's board of commissioners from the present one of selection by the incumbent utility commissioners and county judge to a method of election by the utility district customers. The plaintiff contended the 1990 amendment was: (1) an unconstitutional delegation of legislative power in violation of Tenn. Const. art. II, § 3; (2) an unconstitutional impairment of the obligations of contract under U.S. Const. art. I, § 10, and Tenn. Const. art. I, § 20; (3) an unconstitutional suspension of a general law for the benefit of particular individuals in violation of Tenn. Const. art. XI, § 8; and (4) an unconstitutional alteration of corporate powers in violation of Tenn. Const. art. XI, § 8.

The Chancellor declared the statute to be constitutional. We agree and affirm.

## BACKGROUND

In 1937, the Legislature passed the Utility District Act, which provided for the incorporation of utility districts. The Act provided that the powers of a utility district are to be exercised by a board of three commissioners, who serve four-year terms. In addition, the Act set forth the method by which vacancies on the board are to be filled. Section four of the Act provided that:

> Any vacancy shall be filled and new commissioners shall be elected or old commissioners shall be re-elected upon the expiration of any term of office *by vote of the other commissioners then in office.* In the event the two commissioners cannot agree upon a new commissioner to fill any vacancy, they shall certify that fact to the County Judge or Chairman of the County Court within thirty days of the date upon which such vacancy occurs, and, thereupon, within ten days the County Judge or Chairman of the County Court shall appoint a third commissioner to fill such vacancy.

1937 Tenn.Pub.Act., ch. 248, sec. 4[2] (emphasis added).

---

1. Chapter 861 of the Public Acts of 1990, now codified as Tenn.Code Ann. § 7–82–307(aa) (Supp.1991).

2. The 1937 Tenn.Pub.Acts, ch. 248, was originally codified at Williams Code of Tenn. § 3695.29 (1941), later at Tenn.Code Ann. § 6–2614 (1971), and thereafter as modified at Tenn.Code Ann. § 7–82–307 (1980, 1985 & Supp.1991).

On July 12, 1950, the First Utility District of Carter County was created under the provisions of the Act, and its board of commissioners was elected in accordance with the Act until 1973. In 1973, the Legislature amended the Act to provide that vacancies on a board would be filled by having the remaining commissioners select and certify three nominees to the county judge, who would then appoint one of the three nominees to fill the vacancy. *See* 1973 Tenn.Pub.Act, ch. 249, § 4. Although the 1973 amendment exempted all gas utility districts and a number of other utility districts by population classification, Carter County did not fall within any of the exemptions. As a result, the First Utility District of Carter County thereafter selected its commissioners in compliance with the 1973 amendment.

Following the 1973 amendment, the election statute was amended numerous times, and the amendments applied to various counties based upon population classifications very similar to those used in 1973. *See* Tenn.Code Ann. § 7–82–307 (1985 & Supp.1991). One such amendment was Chapter 861 of the Public Acts of 1990 (Tenn.Code Ann. § 7–82–307(aa) (Supp. 1991)), which provides that, by a two-thirds vote, the county legislative body of any county having a population of not less than 50,200 nor more than 50,250, according to the 1980 or any subsequent federal census, may adopt the new method provided in the statute for selecting commissioners of the county's first utility district. The new method provided in the amendment would allow the utility district customers, instead of the remaining incumbent commissioners, to select a new commissioner to fill any board vacancy.

Because only Carter County fit within the classification due to its population of 50,205 according to the 1980 federal census, the incumbent commissioners of the First Utility District of Carter County filed a declaratory judgment action against the County Executive of Carter County, contending that Chapter 861 delegated the Legislature's authority, impaired the utility district's obligations of contract, suspended a general law for the benefit of particular individuals, and altered the utility district's corporate powers in violation of the state and federal constitutions.

At trial, the Chancellor granted the Attorney General's summary judgment motion in favor of the defendant, finding that Chapter 861 of the Public Acts of 1990 is constitutional in all respects.

## DELEGATION OF LEGISLATIVE POWER

■ The first issue raised in this appeal is whether Chapter 861 of the Public Acts of 1990 contains an unconstitutional delegation of legislative authority. The plaintiff contends that allowing the county legislative bodies of counties having a population between 50,200 and 50,250, according to the 1980 or any subsequent federal census, to adopt a new method of filling vacancies on the utility district board of commissioners by a two-thirds vote violates Article II, § 3 of the Tennessee Constitution.

Article II, § 3 provides, in part, that "[t]he Legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives, both dependent on the people." Although it is silent with respect to delegation of legislative authority, Article II, § 3 has been interpreted by this Court to prohibit the legislature from delegating its power to other bodies of state and local government.

In *McFaddin v. Jackson*, 738 S.W.2d 176 (Tenn.1987), this Court reviewed earlier cases on the issue of delegation of legislative authority, and found that:

> The Tennessee cases involving alleged unconstitutional delegation of legislative power have involved acts that expressly required a favorable popular vote to become operative.

> If the question of whether a law becomes effective is determined by the popular vote of those who will be subject to the law, our cases have held that there has been an unconstitutional delegation of legislative authority. *See Gibson County Special School Dist. v. Palmer,* 691 S.W.2d 544 (Tenn.1985); *Lobelville*

*Special School Dist. v. McCanless,* 214 Tenn. 460, 381 S.W.2d 273 (1964); *Halmontaller v. City of Nashville,* 206 Tenn. 64, 332 S.W.2d 163 (1960); *Buena Vista Special School Dist. v. Board of Election Com'rs of Carroll County,* 173 Tenn. 198, 116 S.W.2d 1008 (1938); *Arthur v. State,* 148 Tenn. 434, 256 S.W. 437 (1923); and *Wright v. Cunningham,* 115 Tenn. 445, 91 S.W. 293 (1905).

*Id.,* 738 S.W.2d at 180.

The rationale followed in all previous Tennessee cases on the issue of the Legislature's unconstitutional delegation of authority has been that:

> no legislative act can be so framed as that it must derive its efficacy from a popular vote. To be valid it must leave the hands of the legislature complete; not in the sense that it may go into effect at once, it is true, but it must at birth bear the impress of sovereignty, and speak the sovereign will. If it contains within itself a condition or a contingency suspending to some future time, or to the happening of some future event, its obligatory force as a rule of action or conduct of the people for whom it was intended, that contingency or that event must be one selected by the sovereign power itself as one, the happening of which shall render it immediately expedient that the suspension of the power inherent in the act shall cease, and that it shall at once become operative as a rule of conduct for the government of the people.

*Wright v. Cunningham,* 115 Tenn. 445, 468–69, 91 S.W. 293, 298 (1905) (quoted in *McFaddin v. Jackson,* 738 S.W.2d at 180).

The difference between constitutional legislation and an unconstitutional delegation of the Legislature's authority is illustrated by comparing *McFaddin v. Jackson, supra,* and *Menefee Crushed Stone Co. v. Taylor,* 760 S.W.2d 223 (Tenn.App.1988). In *McFaddin,* this Court held that a state inheritance tax statute, which incorporated a federal estate tax statute and any future amendments, did not involve an unconstitutional delegation of legislative authority. The *McFaddin* court found that the Legis-

lature's selection of the future contingency that Congress might amend the federal tax statute "complies with the mandate of *Wright,* that the happening of some future event be one selected by the sovereign power and that upon its happening it becomes immediately operative." *McFaddin,* 738 S.W.2d at 180.

In *Menefee,* the Court of Appeals addressed the constitutionality of a statute authorizing *any* county to levy a tax on all sand, gravel, sandstone, chert, and limestone severed from the ground within its jurisdiction. The statute provided that it "shall not become effective ... unless it is approved by a two-thirds (⅔) vote of the county legislative body [and] [s]uch county legislative body shall approve or disapprove this act within one hundred twenty (120) days of the effective date of this act for ratification purposes." *Menefee,* 760 S.W.2d at 227.

After reviewing the statute and the governing case law, the Court of Appeals concluded that the statute contained an unconstitutional delegation of legislative authority. They found that the statute was not complete when it left the Legislature because it would never go into effect if no county legislative body approved it by a two-thirds vote within a 120–day period. This made the statute unconstitutional because "[w]hether a general law becomes effective cannot be placed in the hands of counties or municipalities. To do so allows counties or municipalities to determine what the general law will be. Only the legislature can say what the general law will be." *Menefee,* 760 S.W.2d at 227.

In contrast with "general laws" of statewide application, however, there are certain laws dealing with local matters where delegation is not only permissible, but is mandatory. The Home Rule provision of Article XI, § 9 of the Tennessee Constitution, enacted in 1953, provides that:

> The General Assembly shall have no power to pass a special, local or private act having the effect of removing the incumbent from any municipal or county office or abridging the term or altering the salary prior to the end of the term

for which such public officer was selected, and any Act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected.

We think the 1990 amendment in this case, Chapter 861 of the Public Acts of 1990, is governed by Article XI, § 9. Chapter 861 is not a "general law" of statewide application. It is an act local in effect because only Carter County currently fits within the population classification of that statute. Moreover, Chapter 861 affects a municipality, i.e., the plaintiff utility district, *see Rector v. Griffith*, 563 S.W.2d 899, 901 (Tenn.1978), in its governmental capacity. Given the requirements of Article XI, § 9, Chapter 861 was complete when it left the hands of the Legislature because it could not be effective under the constitution until it was approved by a popular vote or a vote of the county legislative body.

Accordingly, we hold that the Legislature did not delegate its authority, in violation of Article II, § 3 of the Tennessee Constitution, when it enacted Chapter 861 of the Public Acts of 1990.

## IMPAIRING THE OBLIGATION OF CONTRACT

■ The plaintiff next contends that it was incorporated under the 1937 Act in 1950, that the issuance of its charter constituted a contract between it and the State of Tennessee, and that the 1990 amendment to the Act unconstitutionally impairs its contractual obligations under the Act, in violation of Article I, § 10 of the U.S. Constitution and Article I, § 20 of the Tennessee Constitution.

Article I, § 10 of the U.S. Constitution provides that "[n]o state shall ... pass any ... law impairing the obligation of con-

tract." The Tennessee Constitution, Article I, § 20, which is part of the declaration of rights, states "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." The meaning of the federal and state constitutional provisions have been held to be identical. *See Paine v. Fox*, 172 Tenn. 290, 112 S.W.2d 1 (1938); *Lake County v. Morris*, 160 Tenn. 619, 28 S.W.2d 351 (1930).

■ The creation of a municipality or public corporation is a political act, and the prohibition against impairments of obligation of contract contained in Article I, § 10 of the U.S. Constitution does not apply to statutes that change or repeal the charters and powers of municipalities and public corporations. *See Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); *Houck v. Little River Drainage Dist.*, 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266 (1915). Since utility districts such as the plaintiff are public, municipal corporations, *Rector v. Griffith*, 563 S.W.2d at 901, Tenn.Code Ann. § 7–82–307(a)(1) (1984 & Supp.1991), Article I, § 10 of the U.S. Constitution, and Article I, § 20 of the Tennessee Constitution do not protect them from legislation amending their charters or altering their powers.

Accordingly, we hold that Chapter 861 of the Public Acts of 1990 does not unconstitutionally impair the plaintiff's obligations of contract.

## SUSPENSION OF GENERAL LAW FOR PARTICULAR INDIVIDUALS

■ The next issue we are required to address is whether Chapter 861 unconstitutionally suspends a general law for the benefit of particular individuals, in violation of Article XI, § 8 of the Tennessee Constitution. That section provides, in part, that:

The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, priv-

ileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

By its terms and effect, Article XI, § 8 applies only to situations where the legislation seeks "to suspend a general law," attempts to subject entities to obligations not imposed upon the community at large, or grants a privilege not available "to any member of the community, who may be able to bring himself within the provisions of such law." *Civil Serv. Merit Bd. v. Burson*, 816 S.W.2d 725, 731 (Tenn.1991). "[I]n order to trigger analysis of a statute under the provisions of Article XI, Section 8, that statute must 'contravene some general law which has mandatory statewide application.'" *Id.* (quoting *Leech v. Wayne County*, 588 S.W.2d 270, 273 (Tenn. 1979)).

■ The plaintiff contends that the Utility District Act of 1937 is a general law governing the selection of utility district commissioners, and that Chapter 861 unconstitutionally suspends that general law for the benefit of the particular individuals of Carter County, since only Carter County currently fits within the population classification contained in Chapter 861. We find no merit to this argument.

In *Rector v. Griffith*, 563 S.W.2d 899 (Tenn.1978), this Court addressed the argument that the Utility District Act of 1937 is a general law governing the selection of utility district commissioners in the context of an Article XI, § 8 challenge to 1977 amendment to the Act—Chapter 237 of the Public Acts of 1977. The 1977 amendment modified the number and the method of selecting the board of commissioners of the Citizens Gas Utility District of Scott and Morgan Counties, and the incumbent commissioners challenged the amendment on the basis that it unconstitutionally suspended a general law for the benefit of particular individuals.

After reviewing the 1937 Act and the amendments thereto, the *Rector* court found that "it authorizes many different and varied methods of selection of district commissioners," and that "[u]niformity in selection and tenure are not demonstrated statewide policies under the general statutes." *Id.*, 563 S.W.2d at 902. The court, therefore, held that Chapter 237 of the Public Acts of 1977 was constitutional, because it did not offend any general law or violate any uniform policy for the election of local officials. *Id.*, 563 S.W.2d at 904.

In this case, we find the reasoning of *Rector v. Griffith* to be dispositive. Although the Utility District Act of 1937 has been amended several times since the *Rector* decision, the Legislature has not modified the statute to create a uniform general law of statewide application in the context of selecting utility board commissioners. As the *Rector* court pointed out, "where there is no general state law which is mandatorily applicable, the cases recognize that the General Assembly has almost unlimited discretion to enact private legislation affecting the structure and organization of local government units." *Id.* (citing *Henry v. Abernathy*, 175 Tenn. 512, 136 S.W.2d 51 (1940); *Townsend v. Ray*, 174 Tenn. 634, 130 S.W.2d 96 (1939)).

The plaintiff also contends that the amendments to the Utility District Act of 1937, particularly Chapter 249 of the Public Acts of 1973, unconstitutionally suspend a general law for the benefit of particular individuals. The essence of the plaintiff's argument is that the 1937 Act was a general law of statewide applicability governing the election of utility district commissioners until the Legislature began amending the election statutes in 1973, and all of the amendments to the election statutes since 1973 unconstitutionally suspend a general law for the benefit of particular individuals. In *Rector*, we held to the contrary with respect to a 1977 amendment to the 1937 Act, while noting the many previous amendments and the lack of a uniform statewide policy in selection and tenure. We decline to rule on the constitutionality of other amendments to the 1937 Act, other than the 1990 amendment before us, because potentially affected utility districts have not been made parties to this litiga-

tion, as required by Tenn.Code Ann. § 29–14–107(a) (1980).

Accordingly, we hold that Chapter 861 of the Public Acts of 1990 does not unconstitutionally suspend a general law for the benefit of particular individuals, in violation of Article XI, § 8 of the Tennessee Constitution.

## ALTERATION OF CORPORATE POWERS

 The final question to be determined on this appeal is whether Chapter 861 of the Public Acts of 1990 unconstitutionally alters the plaintiff's corporate powers, in violation of Article XI, § 8. The last sentence of Article XI, § 8, provides that:

> No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed and no such alteration or repeal shall interfere with or divest rights which have become vested.

The plaintiff contends that because only Carter County currently fits within Chapter 861, it violates the last sentence of Article XI, § 8 as an unconstitutional attempt to modify a law applicable to a municipal service corporation by a special law, instead of by a general amendment to the general laws. We find no merit in this argument because the last sentence of Article XI, § 8 does not apply to laws affecting public or municipal corporations.

In *West v. Tennessee Hous. Dev. Agency*, 512 S.W.2d 275 (Tenn.1974), this Court held that "[t]he constitutional provision that 'No corporation shall be created, or its powers increased or diminished by special laws,' applies alone and exclusively to private corporations, and has no application to public or municipal corporations." *Id.*, 512 S.W.2d at 283 (citations omitted). Since utility districts such as the plaintiff are public, municipal corporations, *Rector v. Griffith*, 563 S.W.2d at 901, Tenn.Code Ann. § 7–82–307(a)(1) (1984 & Supp.1991), the last sentence of Article XI, § 8 does not protect the plaintiff from laws altering or amending its corporate powers.

As a result, we hold that Chapter 861 of the Public Acts of 1990 does not unconstitutionally alter the plaintiff's corporate powers, in violation of Article XI, § 8 of the Tennessee Constitution.

## CONCLUSION

Accordingly, having found Chapter 861 of the Public Acts of 1990 constitutional in all respects, we affirm the Chancellor's judgment. The costs of this appeal are taxed to the plaintiff.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.